1

1           UNITED STATES DISTRICT COURT

2           EASTERN DISTRICT OF NEW YORK

3    - - - - - - - - - - - - - - X

4    UNITED STATES OF AMERICA,        : 12cr00350
                    Plaintiff,        :
5                                      :
     V.                                :
6                                      : United States Courthouse
                                       : Brooklyn, New York
7                                      :
     PETER LIOUNIS,                    : January 10, 2014
8                                      : 11:30
                    Defendant.         :
9                                      :

10   ------------------------- X

11        TRANSCRIPT OF CRIMINAL CAUSE FOR PRE-TRIAL CONFERENCE
               BEFORE HONORABLE I. LEO GLASSER
12                 UNITED STATES DISTRICT JUDGE

13   APPEARANCES:

14   For the Government:    LORETTA LYNCH
                            United States Attorney
15                          Eastern District of New York
                            BY:  JUSTIN LERER
16                          BY:  MICHAEL YAEGER
                            Assistant United States Attorneys
17                          271 Cadman Plaza East
                            Brooklyn, New York 11201
18

19
     For the Defendant:     MICHAEL H. GOLD, ESQ
20                          350 Fifth Avenue, Suit 4400
                            New York, New York 10118
21

22   Court Reporter:        NICOLE CANALES, RPR, CSR
                            225 Cadman Plaza East
23                          Brooklyn, New York 11201
                            718-613-2509
24
     Proceedings recorded by mechanical stenography, transcript
25   produced by Computer-Assisted Transcript.

1          THE CLERK:  Criminal Cause for Pretrial Conference,

2   the United States versus Peter Liounis.  Please state

3   appearances for the record.

4          MR. LERER:  Justin Lerer and Michael Yeager for the

5   United States.  Good morning, your Honor.

6          THE COURT:  Good morning.

7          MR. GOLD:  Standby counsel, Michael Gold.  Good

8   morning, your Honor.

9          THE DEFENDANT:  Peter Liounis.  Good morning,

10  your Honor.

11         THE COURT:  Good morning, Mr. Liounis.  I asked you

12  to come in today so that we can resolve matters, pretrial

13  matters, so that we're all on the same page as to how we're

14  going to proceed with respect to jury selection and things of

15  that sort.  Before I get to that, it's my understanding that

16  there are no outstanding motions pending before me now; is

17  that correct?

18         MR. LERER:  Your Honor, that's not the Government's

19  understanding.  We believe there are four motions from the

20  Government that are still outstanding.

21         THE COURT:  Which ones are those?

22         MR. LERER:  They are a motion to admit 404B

23  evidence, related to recorded calls between the defendant and

24  a victim in a prior scheme, a related scheme.  That victim's

25  last name is Moldrem, M-o-l-d-r-e-m.  There's a motion to

3

1    admit a call recorded at the MDC, at the prison.  There's a

2    motion regarding the fact -- our belief that forfeiture could

3    be decided by the Court at sentencing, and would not be --

4    need to be presented to the jury, and there is a final motion

5    regarding the Government's cross-examining the defendant on

6    prior convictions for crimes involving dishonesty or false

7    statement.

8              At the last conference, the Court had gone through

9    the motions and asked the defendant if he wanted to file

10   something.  Defendant hasn't filed anything.

11             THE COURT:  Okay.  Why don't we deal with those now.

12   We can dispose of those right now.

13             Mr. Liounis, you're prepared to deal with that?

14             THE DEFENDANT:  Your Honor, I'm not prepared to deal

15   with that today.  I started writing -- I started working on

16   these motions.  I plan on submitting them very soon to

17   the court in writing.

18             THE COURT:  Very soon, meaning what?  I'll give you

19   a week; is that enough?

20             THE DEFENDANT:  Excuse me?

21             THE COURT:  A week.

22             THE DEFENDANT:  One week?

23             THE COURT:  These motions have been pending now for

24   some time.  I thought I had disposed of all of them.

25             THE DEFENDANT:  Could I just be clear on the four

4

1    that we're talking about?  I just want to make sure the 404B;

2    is that what I was told?

3              THE COURT:  It's a 404B motion.

4              THE DEFENDANT:  MDC call?

5              THE COURT:  Yes.

6              THE DEFENDANT:  Something about forfeiture?

7              THE COURT:  Yes.

8              THE DEFENDANT:  And the last part was

9    cross-examining myself or cross-examining the agents?  I think

10   there was something in good faith with the agents.

11             THE COURT:  If you're going to be testifying on your

12   own behalf, as you have a perfect right to do, Mr. Liounis, as

13   I understand the cross-examination would be of you.

14             THE DEFENDANT:  All right.  Okay.  But there was

15   also -- I believe a fifth issue with -- the Government had

16   mentioned something about the agents testifying and myself

17   being able to cross-examine them in good faith.

18             MR. LERER:  Your Honor, you granted our motion

19   in limine previously on that issue.

20             THE COURT:  Okay.  Apparently I decided that motion.

21   I don't recall it, but, apparently, I have.

22             THE DEFENDANT:  I understand it.  The problem is

23   that was ruled prior to me receiving that.  I never answered

24   that because I never received that.

25             THE COURT:  You never received the motion?

1    THE DEFENDANT:  That's right.  I never received

2  that.  I received an e-mail from my standby counsel the day

3  before I came here.  They said if, I'm not mistaken, to bring

4  up some of these issues, but I did not see it, didn't read it.

5    THE COURT:  This e-mail that you received from

6  Mr. Gold --

7    THE DEFENDANT:  Yes.

8    THE COURT:  -- was that an e-mail that informed you

9  of that motion?

10    THE DEFENDANT:  It didn't inform me, really, of

11  much.  I don't know if you remember.  I can get the e-mail for

12  you.

13    MR. GOLD:  Sure.

14    THE DEFENDANT:  I mean -- but it would have had to

15  do with something.

16    MR. LERER:  I can actually make a --

17    THE COURT:  What?

18    MR. LERER:  I think that's probably both untrue and

19  potentially irrelevant.  The motion was filed on October 25th,

20  your Honor.  The Court discussed the motion in -- at

21  conferences on the 27th, I believe.  And the first were the

22  two conference dates, I believe, that we have.  There were two

23  conferences this Court held after we filed the motion, and

24  the Court discussed the motion at both conferences, and

25  the Court issued a written opinion -- granting that portion of

6

1     the motion, and the --

2              THE COURT:  All right.  So there are four motions,

3     Mr. Liounis, that you wish to respond to.  How much time do

4     you need?

5              THE DEFENDANT:  If it's okay, I need seven to

6     ten days.  Would that be okay?

7              THE COURT:  That will be fine, Mr. Liounis.  I'll

8     give you ten days.  Okay?

9              THE DEFENDANT:  I appreciate that.

10             THE COURT:  You're very welcome.  Is there anything

11    else that's outstanding or that has to be discussed?

12             MR. LERER:  Yes, your Honor.  The Government has a

13    few issues that we'd like to raise.

14             THE COURT:  Go ahead.

15             MR. LERER:  The first is I want to make a record

16    regarding plea negotiations, in light of Supreme Court

17    precedent that's come down recently.  The Government had made

18    offers to the defendant before they have all been withdrawn.

19    They were not accepted and now all withdrawn.  This morning we

20    communicated with standby counsel to find out if the defendant

21    wanted to talk about further plea negotiations.  He's refused

22    to even talk to us.  We expect after conviction he will face

23    guidelines of 360 months to life.  We plan to make no further

24    offers.

25             THE COURT:  Okay.

7

1          MR. LERER:  Then there are some other issues to

2     raise.  There's the issue of experts.  The Court will recall

3     that the Court precluded a voice expert but allowed Cell Site

4     experts for both sides.  And the Court, in a written opinion,

5     said that a Daubert Hearing would be held if there was no

6     stipulation on qualifications.  At this point, due to the very

7     ambiguous notice of the testimony that the defendant provided,

8     we simply can't even come to a position.  We don't feel on

9     notice of what the defendant's Cell Site expert is going to

10    testify about, so, you know, we would request that the court

11    inquire on that matter.

12          THE COURT:  What else?

13          MR. LERER:  The Government served alibi demands on

14    October 22nd and amended it on October 27th, two-and-a-half

15    months ago.  The defendant was required to provide written

16    notice of an intended alibi ten days after receiving notice,

17    and we've received no notice of an alibi defense.  So, again,

18    we'd request to know whether the defendant intends to offer an

19    alibi defense and that he then comply with Rule 12.1A.

20          THE COURT:  Is that it?

21          MR. LERER:  That's it, your Honor.  Thank you.

22          THE COURT:  With respect to those two matters,

23    Mr. Liounis, when you first requested to proceed pro se, for

24    the purpose of determining whether you should be permitted to

25    proceed pro se, I believe I asked you a number of questions

8

1    and then told you not only that it was inadvisable for you to

2    make that decision, you did; you have a perfect right to, but

3    I also told you that there will be no special consideration,

4    insofar as observing Rules of Evidence, rules of the court,

5    rules of criminal procedure, because you're proceeding pro se;

6    that you will be required to comply with the rules of the

7    court, and the rules of criminal procedure and the Rules of

8    Evidence.

9            Now, the rules provide that if you're going to be

10   calling an expert witness, you should provide the Government

11   what the prospective testimony, proposed testimony, of the

12   expert, what it is that he's going to be testifying to.

13   You've been asked to do that some time ago and I'm told that

14   you haven't done it.  I could, I suppose, preclude you from

15   even calling that expert if you're not going to comply with

16   the rule, but I'm going to give you five days, not ten, five,

17   to tell the Court -- not the Court but the Government what it

18   is that expert is proposing to testify about.

19           Second, I'm told that you were asked back in October

20   to provide the Government with any alibi defense that you

21   would propose.  You were served but haven't done that either.

22   Again, I could preclude you from offering any alibi defense at

23   all if you're not going to provide the Government with what

24   your alibi is, as the rules of criminal procedure provide.  So

25   I'm going to give you five days to tell me what your alibi

1  defense might be.  Is there anything further with respect to

2  pretrial matters?

3          MR. LERER:  No, your Honor.  I would just call the

4  defendant's attention to the fact that Rule 12.1A makes very

5  clear the nature of the disclosure that must be made if the

6  defendant wishes to present an alibi defense.  It's quite

7  thorough.  Thank you, your Honor, for your time this morning.

8          THE COURT:  With respect to other matters, I'm going

9  to request -- have the parties been given a copy of my

10  criminal pretrial rules?

11          MR. LERER:  Yes, sir.

12          THE COURT:  Mr. Kessler?

13          THE CLERK:  Yes, Judge.

14          THE COURT:  If you're going to have proposed

15  voir dire questions, I'd like you to submit those to me by the

16  22nd of January.  Also request the charge or proposed jury

17  instructions by the 22nd of January.  So that's requests, the

18  charge and proposed jury instructions, by the 22nd of January.

19  That's just five days before the trial date.  Now, let me talk

20  to you a little bit about the way I go about selecting a jury.

21          First, will you give me some idea as to how long you

22  think this case will take to trial?

23          MR. YAEGER:  We believe, your Honor, that the

24  Government's case in chief could take two weeks.  Okay.

25          THE COURT:  All right.  I would suspect that we

1   would need four alternates, probably, would be appropriate.

2   Now, with respect to jury selection, let me tell you how I go

3   about selecting the jury.  When the panel first arrives in

4   this courtroom, they will obviously be sworn.  I will give

5   them some preliminary information as to why they're here, the

6   nature of the case.  I'll read the indictment to them and

7   inform them that the indictment is not evidence, inform them

8   of the defendant's presumption of innocence and so on.

9           And I will then direct a series of general questions

10  to the entire panel.  I will have whatever voir dire requests

11  have been submitted to me five days before that, and such

12  other voir dire questions as I deem to be appropriate, general

13  questions which I wouldn't have to repeat as I conduct an

14  individual voir dire after I'm finished with those.  And I

15  will ask the prospective members of the jury to either jot

16  down any of those general questions that they would answer yes

17  to.  I'll try to bear clearly in mind what questions they

18  would answer yes to.  I will then turn to the members of the

19  prospective jury in the jury box and proceed to inquire of

20  each of them the general questions, pretty standard questions

21  that are asked of prospective jurors.

22          When I've completed asking all of those already

23  seated in the jury box -- and, by the way, I should have told

24  you that initially.  Mr. Kessler, the deputy clerk, will pick

25  names out of a drum and sit persons in the jury box.  Those

1   general questions will be addressed not only to the jurors

2   sitting out in the courtroom but also to those already seated

3   in the jury box.  After I've complete the voir dire, parties

4   may then exercise peremptory challenges.

5           The Government has six peremptories, the defendant

6   has ten.  And peremptories will be exercised by rounds.  After

7   I have completed the voir dire of the jurors in the box, I

8   will ask the defendant and the Government to come up to the

9   sidebar and exercise their peremptory challenges.  The

10  Government will go first in rounds one, three and five.  The

11  defendant will go first in rounds two, four and six.  The

12  Government will have one peremptory in each of the six rounds.

13  The defendant will have two peremptories in the first four

14  rounds, and one in the fifth and one in the 6th.

15          At the conclusion of the fifth round, assuming that

16  you have each exercised your peremptory and excused two

17  jurors, since you each would have one challenge in the fifth

18  and sixth rounds, instead of calling two to replace those, you

19  will call four.  So you will know, or I'll call six, when I

20  have four alternates, so you will know exactly who your

21  alternates are, and you have one peremptory for two

22  alternates.

23          When the peremptories have been exercised, I will

24  ask the parties whether the jury is satisfactory, and

25  hopefully the answer will be yes, and I will then have the

1   jury sworn and proceed to give the jury preliminary

2   instructions, to make sure their responsibility, that they're

3   the sole judges of the fact, some notion of how long the trial

4   was expected to take, what the trial schedule is like, and

5   things of that.  That generally takes about 8 or 10 minutes.

6           I will then turn the proceedings over to counsel to

7   make opening statements.  The Government will make its opening

8   statement first, and the defense will make its opening

9   statement thereafter.  I feel very, very strongly about the

10  fact that opening statements should be opening statements and

11  not summations.  An opening statement should simply tell the

12  jury what you believe the evidence in this case will prove.

13  And if you're going to get into a long harangue and a long

14  summation, I'll cut you off.  Although, I dislike doing that.

15          Mr. Liounis, I think I told you at least twice now,

16  but I'm going to tell you again, you are entitled to no

17  special consideration -- I think I made some indication of

18  that in the last memorandum and order that I issued -- because

19  you proceed pro se.  You will be expected to comply with

20  appropriate courtroom procedure and protocol and conduct

21  yourself accordingly.  When opening statements have been

22  concluded, the Government will then proceed to present its

23  case.

24          Mr. Liounis, if you have objections to any question

25  or evidence which the Government seeks to introduce, of course

1  you may make your objection.  Do it in an ordinarily fashion,

2  indicating that you're objecting, and if I have some doubt as

3  to what it is -- what the purpose of your objection is, I'll

4  ask you to explain it to me.  When each witness has included a

5  direct examination, you can cross-examine, but, again, you're

6  required to comply with the Rules of Evidence, which includes

7  framing questions as appropriately, as the law requires, and

8  as you can manage to do.

9          And when the Government has concluded presenting its

10  evidence, the Government will rest.  The Government will not

11  rest, the Government will say it's concluded its case.  And

12  you can make your Rule 29 motion.  If you don't know what that

13  is, I'm sure Mr. Gold might help you and explain it to you.

14  That motion is normally made by a defendant at the end of the

15  Government's case.  You can then proceed, if you wish, to

16  testify for yourself and call witnesses to testify for you.

17          I don't know whether you intend to or do not intend

18  to testify on your own behalf.  If you are going to testify on

19  your own behalf, and you have an absolute right to do that,

20  the question which then, obviously, presents itself as to how

21  that testimony is going to be presented.  Hypothetically, I

22  suppose, you can ask yourself questions and then proceed to

23  answer them, or you can testify in a narrative fashion.  Doing

24  that will present a series of problems, because if you're

25  going to tell your story in a narrative fashion, your story

1   will also have to comply with Rules of Evidence, primarily

2   hearsay, and all other rules which may be appropriate.  And in

3   the 31 or nearly 32 years that I have been here, I have had

4   just one other case in which the defendant elected to proceed

5   pro se, but he didn't testify on his own behalf.  So I haven't

6   experienced a pro se defendant testifying on his own behalf,

7   but I'm perfectly aware of what the problems may be.

8             And the thought occurred to me that it might be a

9   consideration, Mr. Liounis, that you prepare questions that

10  you would have asked yourself or a defendant testifying on his

11  own behalf, prepare them in writing, and I'll consider

12  permitting Mr. Gold to ask the questions and have you answer

13  them.  That would provide an orderly presentation of such

14  evidence which you wish to present on your own behalf, and it

15  would enable evidentiary rules to be made in an intelligent

16  and orderly fashion with respect to the questions.  So you may

17  want to consider that.  And it may be that on the 22nd of

18  January I'll ask you all to come back again and discuss that

19  aspect of the trial procedure.

20            MR. LERER:  Your Honor, could I be heard briefly

21  on --

22            THE COURT:  What?

23            MR. LERER:  Can I be heard briefly with another

24  matter or two?

25            THE COURT:  Let me finish.

15

1          MR. LERER:  I apologize, your Honor.

2          THE COURT:  When you have presented all your

3    evidence, you'll tell me that you're resting.  The Government

4    may or may not present a Government case, and there will come

5    a time, hopefully, when I'll hear that both sides rest.  You

6    may want to renew your Rule 29 motion, at that point, and then

7    we'll proceed to summations.  The Government will come up

8    first.  You will come up thereafter, Mr. Liounis, and the

9    Government will have an opportunity to reply.  Before all that

10   happens, before summations begin, we will have a charging

11   conference.

12          I will go over the charge I propose to present to

13   the jury.  Hopefully I will have prepared a charge by then and

14   have given you copies of it to consider.  And making any

15   objections to portions of the proposed charge, I'll submit

16   such additions or amendments that you wish to make.  And after

17   you've both summed up, I'll charge the jury and they'll return

18   a verdict after they've had an opportunity to deliberate.  And

19   that's the way we will proceed.

20          Now, Mr. Lerer, you said you want to bring some

21   other matters to my attention.

22          MR. LERER:  Briefly, your Honor, I just wanted to

23   note we'll still be complying with the Court's pretrial order,

24   and we may file a trial brief setting out a few evidentiary

25   issues.  I just wanted to alert the Court to that.

1          THE COURT:  Pretrial order provides for that, if

2    there are any evidentiary issues, any evidentiary questions.

3    Trial order indicates those should be made, I think, about ten

4    days before trial, whatever it is.

5          MR. LERER:  It says five days.

6          THE COURT:  Whatever it is, if you need ten days,

7    that's fine.

8          MR. LERER:  I think they will not be very

9    challenging issues for your Honor, and I just wanted to be

10   clear as to a few other issues.

11         THE COURT:  Before you go into that, the four

12   motions you said are still open, the expert witness

13   information, the alibi information, telephone call from the

14   MDC, and some other 404B evidence with respect to somebody

15   called -- some testimony in another trial; was that what I

16   remember?

17         MR. LERER:  No, your Honor.  I can just go through

18   them.  The MDC call as your Honor stated --

19         THE COURT:  Somebody named Moldrem?

20         MR. LERER:  Moldrem, it's not another trial, it's a

21   recording of a related fraud.

22         THE COURT:  With respect to those, when Mr. Liounis

23   submits his reply, if I think oral argument is necessary, I'll

24   ask you.  If I don't think it's necessary, I'll decide on the

25   papers.

17

1          MR. YAEGER:  Yes, your Honor.

2          THE COURT:  Now, what do you want to say?

3          MR. LERER:  Just housekeeping matters, as it were,

4   what hours will the Court be sitting, generally speaking?

5          THE COURT:  Generally start at 10:00.  It's not

6   written in stone.  May be I'll start at 9:30, somewhere around

7   there.  And we generally take a brief recess at about 11:30.

8   We recess for lunch at 1:00 and generally resume at 2:00.

9   Recess at around 3:30, briefly, and then conclude, generally,

10  around 5:00.  I will probably just set Mondays through

11  Thursdays and not Friday, but that's not written in stone

12  either.  Depending upon whether I do or don't have a Friday

13  calendar, I may continue to sit on Fridays as well.  What

14  else?

15         MR. LERER:  As to the form of objections, should we

16  just state objection?  Should we -- no stating of the reason?

17         THE COURT:  If I'm not clear in my mind as to what

18  the nature of the objection is, I'll ask you to tell me why.

19         MR. LERER:  Yes, sir.

20         MR. YAEGER:  Yes, your Honor.

21         THE COURT:  More often than that, I think I can

22  understand what the objection is.

23         MR. LERER:  Thank you.

24         THE COURT:  There are times when I don't.  I will

25  appreciate your clarification.  Anything else?

1          MR. LERER:  No, your Honor, not from the Government.

2          THE DEFENDANT:  I have a few issues, your Honor.

3          THE COURT:  Sure.

4          THE DEFENDANT:  First, on the alibi demands that

5     needs to be within five days.  What exactly -- I was confused

6     as to what type of material are they asking for, the

7     Government, as far as an alibi.  Because I don't know if

8     they're looking for phone calls, witnesses.  I'm a little

9     confused with that.

10          THE COURT:  Well, that's why I asked Mr. Gold to

11     assist you.  He can help you with that.  If, for example --

12     just to give you an example, Mr. Liounis, the Government is

13     going to present evidence that something happened on a certain

14     day at an address in Queens, and you propose to present

15     evidence that on that day you were in Tanzania, that would be

16     an alibi.  All right.

17          THE DEFENDANT:  And, now, here's my thing, what

18     happens if I can't remember these dates?  Because as I

19     approach trial, I do get my investigator someone to get me

20     something factual, am I going to be barred from bringing that

21     into trial if it proves, like, one of these dates or two of

22     these dates that I couldn't get prior to the five days?

23          THE COURT:  What is the problem with respect to the

24     day?

25          THE DEFENDANT:  I have documents being researched,

1    ATM withdrawals.  I'm working on trying to figure out these

2    times and dates where I might have been.

3              THE COURT:  That's not a question of alibi.  If the

4    Government's offering evidence that something happened on a

5    certain day, and you have some documentary evidence which

6    indicates that that's not the date, it was on another date,

7    that's not an alibi.  That's factually evidence which the

8    Government has presented.

9              THE DEFENDANT:  Oh, okay.  Okay.  As far as my

10   personal witnesses, is that also tied to that five-day limit,

11   my personal witnesses that are testifying or just experts?

12             THE COURT:  Expert.  Provide the testimony of the

13   expert.  It would be helpful if you have a list of witnesses

14   that you can provide in advance.  How many witnesses do you

15   contemplate calling?

16             THE DEFENDANT:  Personal or expert?  I'm sorry.  I

17   didn't hear you.

18             THE COURT:  Beside an expert, how many witnesses do

19   you contemplate calling?

20             MR. GOLD:  Close to 10.

21             THE COURT:  Pardon?

22             THE DEFENDANT:  Close to 10 witnesses.

23             THE COURT:  If you have the names of those

24   witnesses, it would be good if you can submit those names in

25   advance.

1        THE DEFENDANT:  I'll definitely do that.  Also, one

2   more thing, your Honor, you mentioned it was an order dated

3   December 18th, 2013.  It is a memorandum in order that you

4   just spoke about a few minutes ago; I just want to let

5   the Court know I did reply to that, and I brought a copy, and

6   I would like to submit it and ask that that be filed, if that

7   is okay.  This is your copy.  I'm sorry, I couldn't make more

8   than one, but I did my best.  Who do I give that to?

9        THE COURT:  Mr. Kessler.

10        THE DEFENDANT:  Thank you.

11        THE COURT:  You'll see that it's on ECF.

12        MR. LERER:  I think it's already on ECF.  I think

13   this document is on ECF.  We'll read it.  Your Honor, the

14   defendant's comments raised just one or two other issues.  I

15   just want to note we have not received a speck of discovery

16   from the defendant, nor any 3500 material.  I just want to

17   make sure the defendant is aware of reciprocal discovery

18   obligations.

19        THE COURT:  Anything else?

20        MR. LERER:  No, sir.

21        THE COURT:  Thank you very much.  I'll see you on

22   the 22nd.

23        MR. GOLD:  Did we set a time?

24        THE DEFENDANT:  Just have one more -- I'm sorry,

25   your Honor, just one more quick thing.  I have a motion that

NICOLE CANALES, CSR, RPR

1  I'm working on, motion in limine to preclude evidence.  What's

2  my deadline on submitting that?

3  　　　　THE COURT:  There have been so many deadlines on so

4  many motions, I don't know whether I ever did provide a

5  deadline.  I think in the criminal pretrial order there may be

6  a deadline for motions, which I'm sure has long since passed.

7  But if you got a motion that you wish to make filed together

8  with the expert information that you're to submit five days

9  from now.  Okay?

10  　　　　THE DEFENDANT:  Okay.

11  　　　　THE COURT:  Anything else?

12  　　　　MR. GOLD:  I just don't think we set a time for the

13  22nd.

14  　　　　THE COURT:  January 22nd.  How about 10:00 o'clock?

15  　　　　Is that a good time, Mr. Kessler?

16  　　　　THE CLERK:  Two matters at 10:30.  You have one

17  sentencing, I'm sorry, at 10:30 on that day.

18  　　　　THE COURT:  What kind of matter is it?

19  　　　　THE CLERK:  It's a sentencing and a violation of

20  supervised release.

21  　　　　THE COURT:  Why don't you set it down for 11:30 for

22  this.

23  　　　　THE CLERK:  11:30 a.m.; is that okay?

24  　　　　MR. LERER:  Thank you.

25  　　　　MR. YAEGER:  Thank you, your Honor.

1          THE COURT:  11:30 on the 22nd of January.  And if I

2    need oral argument on these four motions that he's going to

3    reply to, I'll let you know.  Otherwise, I might -- my

4    intention is to decide the motions on the papers.  All right.

5    There's nothing further.  Thank you very much.

6          MR. LERER:  Thank you, your Honor.

7          MR. YAEGER:  Thank you.

8          MR. GOLD:  Thank you.

9                (Proceedings adjourned.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25