```
                                                                           1

 1                   UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
 2
     - - - - - - - - - - - - - - X
 3
     UNITED STATES OF AMERICA,    :
 4                                :
                  Plaintiff,      :     CR-12-350 (ILG)
 5                                :
          -against-               :     United States Courthouse
 6                                :
                                  :     Brooklyn, New York
 7
     PETER LIOUNIS,               :
 8                                :
                  Defendant.      :
 9                                :     January 15, 2014
                                  :     11:30 a.m.
10   - - - - - - - - - - - - - - X

11                  TRANSCRIPT OF STATUS CONFERENCE
                  BEFORE THE HONORABLE I. LEO GLASSER
12                UNITED STATES DISTRICT SENIOR JUDGE

13   APPEARANCES:

14   For the Plaintiff:      LORETTA E. LYNCH, ESQ.
                             United States Attorney
15                           BY:  JUSTIN LERER, ESQ.
                             Assistant United States Attorney
16
     For the Defendant:      MICHAEL H. GOLD, ESQ.
17                           Standby counsel

18

19

20
     Court Reporter:         FREDERICK R. GUERINO, C.S.R.
21                           225 Cadman Plaza East
                             Brooklyn, New York
22                           (781) 613-2503

23

24
     Proceedings recorded by mechanical stenography, transcript
25   produced by CAT.
```

FREDERICK R. GUERINO, C.S.R.        OFFICIAL COURT REPORTER

1           THE COURT CLERK:  Criminal cause for status
2   conference:  The United States v. Peter Liounis.
3           Will the parties please state your appearances for
4   the record.
5           MR. LERER:  Justin Lerer for the United States.
6           Good morning, your Honor.
7           THE COURT:  Good morning.
8           MR. GOLD:  Standby counsel by Michael Gold for Mr.
9   Liounis.
10          Good morning, your Honor.
11          THE COURT:  Good morning.
12          THE DEFENDANT:  Good morning, your Honor.
13          THE COURT:  We are here at the request of the
14  government for reasons which require, I assume, Mr. Liounis'
15  is aware of.
16          What is it that you want to bring to my attention,
17  Mr. Lerer?
18          MR. LERER:  Your Honor, principally the defendant
19  filed what he styled as a motion for the court to recuse
20  yourself, which you already responded to.  There were
21  intimations, although not a request, difficulties
22  representing himself.  We reached out to Mr. Gold to inquire,
23  and Mr. Gold told us that the defendant said he is now
24  searching for counsel -- retaining counsel to represent him.
25  The government's position on that is, we would want to know

1  by a date certain whether -- we would want to have a notice
2  of appearance by a date certain.  There are victims in this
3  case, and the public has a right to a speedy trial.
4          In addition, the government is being put to a
5  significant expense in booking and canceling travel.  There
6  are a lot of wheels in motion.  If the defendant is going to
7  retain a lawyer, we would request that a notice of appearance
8  would be filed by Friday at the longest.
9          THE COURT:  Excuse me.  I have had no request by
10 Mr. Liounis to revoke his waiver of a Sixth Amendment right
11 to counsel.  If he makes such a request to have counsel
12 represent him, I will consider it, but I will not grant a
13 continuance.
14         MR. LERER:  Okay.  That is also clearly within the
15 court's discretion and amenable to the government.
16         THE COURT:  I have no requests by counsel.
17 Mr. Liounis has never made a request for counsel.
18         MR. LERER:  Your Honor, what I said was there was a
19 concern that there would be an eleventh hour request.
20         THE COURT:  Anything else?
21         MR. LERER:  One other thing, your Honor.  I just
22 wanted to note, we filed a letter on ECF.  I just wanted to
23 put it on the record.
24         THE COURT:  I didn't hear you.
25         MR. LERER:  We put a letter on ECF that we sent to

1   Mr. Liounis.  After the status conference, Mr. Liounis
2   announced, when meeting with the court's deputy and the
3   government and Mr. Gold, that he would be putting in some 50
4   exhibits into evidence, and that he would be calling some ten
5   witnesses to the stand in his defense.  We've repeatedly
6   asked the defendant for reciprocal discovery, for instance,
7   of these 50 exhibits.  He has produced nothing to us.  We
8   reiterate our request for reciprocal discovery, if he intends
9   to put anything into evidence.  We are not asking for a
10  ruling right now, your Honor, on this.
11          THE COURT:  Anything else?
12          MR. LERER:  Not from the government.
13          MR. GOLD:  No, sir.
14          THE COURT:  Anything further?
15          THE DEFENDANT:  Your Honor gave me a deadline of
16  five days Friday, when we were in court, to file pretrial
17  motions.  Today is the fifth day.  I have two of them with
18  me, if you would like me to submit them now.  The third one I
19  would have been working on it today and I would have had it
20  in the mail today, but I'm in the court.  I don't know, but
21  if I could have an extra day or two to file -- I will tell
22  you which ones we are talking about.
23          THE COURT:  I was not of the view that you were
24  making pretrial motions.  I understood that the motions that
25  you had requested some additional time for --

1    THE DEFENDANT:  Maybe I'm saying it wrong.  It was a
2 motion in limine to preclude evidence.  It was an alibi
3 motion.
4    THE COURT:  Right.  That was a reply to the
5 government's motions.
6    THE DEFENDANT:  Correct.
7    THE COURT:  Yes.  All right.
8    THE DEFENDANT:  Could I increase that deadline?
9 Like I said, I'm here today.  Today's the 5th day, and you
10 ordered me within five days to have it done.
11    THE COURT:  Do you have your reply here?  You want
12 to hand it up now?
13    THE DEFENDANT:  I have two of them here now, and I
14 was working on the third one, but.
15    THE COURT:  All right.
16    These are replies.  There were four motions that the
17 government has made that were outstanding.
18    THE DEFENDANT:  This is a CV and letter from the
19 expert that goes along with that.  That needs to be filed
20 with that, please.
21    I also have another note, your Honor.  When I was in
22 court Friday, I had mentioned that the issue of
23 cross-examining the agents in good faith, when you made a
24 ruling, I had alerted the court that that day that you made
25 the ruling, I never received anything, and I had gotten an

1    e-mail the day before I came to court telling me how to
2    respond to something I had no idea about, and the government
3    is denying that.  I think Mr. Gold may have even denied that.
4    And I actually dug through my e-mails and I found the e-mail.
5    Like I said, I think I should be allowed to put in a
6    response, in all fairness.  The e-mail is right here.  It's
7    telling me what they are saying, I will see you tomorrow, and
8    I don't have a clue as to what any of this is.  I didn't get
9    the motion until way after court.  Again, I brought the
10   e-mail to show you, and I just think I should be able to
11   respond to everything that is in that motion.
12              THE COURT:  I'm not sure I understand what it is
13   that you are referring to.
14              There were four motions that we talked about on
15   Friday, that I was reminded, when I asked whether there was
16   still any outstanding motions.  I wasn't aware that there
17   were any still outstanding.  And I was told that there were
18   four outstanding motions that the government had made, which
19   were outstanding because you had never replied to them.  So I
20   gave you five days within which to reply, because those
21   motions were filed I think months ago.
22              Now you say that I have already ruled on a motion?
23              What motion was it that I ruled on?
24              THE DEFENDANT:  On part of a motion.  You could see
25   on the e-mail the 404, all of it is part of the same e-mail.

1           What happened was, I came in to court, and the
2   government opposed me cross-examining the agents because of
3   some complaints that were filed.  I never got a chance to
4   respond, or, you know, prepare myself for that, and you made
5   a ruling in favor of the government.  What I'm trying to say
6   is that I would like to put something in writing to the court
7   in good faith that I should be able to question those agents,
8   if they are testifying as to the civil complaints, provide a
9   basis for that, in good faith.
10              THE COURT:  Is this one of the in limine motions
11  that was outstanding?
12              MR. LERER:  Your Honor, it is one of the in limine
13  motions.  I think that you had ruled from the bench that
14  cross-examination -- it's not one of the four outstanding.
15  There are four still outstanding.  In addition, your Honor
16  had already ruled on a motion in limine to preclude
17  cross-examination as to some agents as to some
18  unsubstantiated allegations against them in civil lawsuits.
19  I believe Mr. Liounis is saying even though you already
20  ruled, he would like a chance to brief the decided motion.
21              THE COURT:  Was that an in limine motion that had
22  been made?
23              MR. LERER:  Yes, it was.
24              THE COURT:  In writing?
25              MR. LERER:  Yes, sir.

1          THE COURT:  Would you please bring that motion back
2     to my attention.  And, Mr. Liounis, if you want to respond to
3     that because you feel I never gave you an opportunity to
4     respond to it, you can do it.
5          THE DEFENDANT:  Thank you.
6          THE COURT:  Anything else?
7          THE DEFENDANT:  I just want to say that -- I just
8     want to make the government understand as well, first of all,
9     I feel I did ask the court to replace Ms. Sharkey and I was
10    refused.  More importantly, my family and friends have not
11    just started today trying to find me an attorney.  They have
12    been trying for a very, very long time.  And I think they may
13    have just finally made a headway with raising funds, because
14    everyone is pitching in to get me representation.  I don't
15    want the government to think that this is being done for some
16    tactical reason or on purpose.  I don't have the funds for an
17    attorney.
18         THE COURT:  Mr. Liounis, I don't want to review this
19    again, but you have never made any explicit request of this
20    court to appoint counsel for you, after you made it very
21    clear that you wish to represent yourself.
22         Now, it is possible for a defendant who has waived
23    his Sixth Amendment right to make a request for a post-waiver
24    of that Sixth Amendment waiver.  The Sixth Amendment right is
25    not absolute, after a defendant has waived his right to

1   counsel.  There is a lot of law out there, Mr. Liounis, which
2   says that whether or not a defendant's post-waiver request
3   for counsel will or will not be granted rests with the
4   discretion of the court.
5          If you wish to request the court to appoint counsel
6   for you, make it, and I will deal with it.  But don't persist
7   in telling me that you have requested counsel to be
8   appointed, after you have waived the right to counsel, and I
9   have denied that request.  There isn't a line in any
10  transcript that I have been able to find which suggests that.
11  As a matter of fact, the transcript is quite clear that when
12  you asked to represent yourself, I advised you that it's a
13  foolish thing to do, and an unintelligent thing to do, and
14  asked you a series of questions for the purpose of making
15  sure whether you were competent to waive your right to
16  counsel.  I found that you were, and granted your right to
17  receive pro se.  There has not been a request by you since to
18  have counsel appointed to revoke that waiver.  If you wish to
19  make an application to have counsel appointed, make it.
20         If there's nothing further, I will see you on the
21  22nd of January.
22         MR. LERER:  Your Honor, could I just have
23  clarification --
24         THE COURT:  I want to make it quite plain that if
25  you wish to have counsel appointed, or you are going to

1  retain counsel, there will not be a continuance of the trial,
2  which has been set for the 27th of January of this year.
3          Anything else?
4          MR. GOLD:  No, sir.
5          MR. LERER:  No, Your Honor.
6          THE COURT:  Thank you.
7          THE DEFENDANT:  Your Honor --
8          THE COURT:  Yes?
9          THE DEFENDANT:  The investigator -- the private
10 investigator has been trying to get into the building, along
11 with a couple of attorneys who are trying to possibly come on
12 board, and we have an issue with separation.  I think I
13 mentioned this before to the court, and it's really affecting
14 my defense.  I mean, nobody can get into the building, I
15 mean, that's the bottom line, nobody could get into the
16 building that can assist me with this trial.  I don't know
17 what to do about it.  Mr. Gold could not get into the
18 building.
19         THE COURT:  Mr. Gold could not get into what
20 building?
21         MR. GOLD:  If I may, your Honor.  I believe what
22 Mr. Liounis is referring to, he's on -- there's a separation
23 order that has been in place for several months with another
24 inmate.  That particular inmate has multiple attorneys,
25 apparently, and gets there at very early hours in the morning

1   and stays in the attorney visiting area throughout the course
2   of the day.  As a result, because of the separation order,
3   anyone that comes thereafter can't get, as Mr. Liounis has
4   referred to, can't get into the building, meaning they can't
5   bring down Mr. Liounis to the visiting area at the same time
6   this other inmate is there.  I can vouch for my own personal
7   experience, there was one time I got there and the other
8   attorney couldn't bring down his client because I got there
9   first.  Knowing about this issue, so I arrived very early.
10  And this followed a prior occasion where I went there and I
11  waited over two hours and couldn't get Mr. Liounis brought
12  down.  In fact what I wound up doing is persuading one of the
13  guards to bring him into the Special Housing Unit, where I
14  was able to see him up there.  So we were able to be
15  accommodated that one time.  But there have been occasions
16  where I have gone in, and because I got there second, I was
17  not able to see him.  I believe that's what he's referring
18  to.
19          THE COURT:  I don't recall having this brought to my
20  attention and trying to deal with it.
21          This is happening at the MDC?
22          MR. GOLD:  Yes, sir.
23          THE COURT:  Was the government aware of that?
24          MR. LERER:  Your Honor, I'm aware that there is a
25  separation which predates my time on the case.  I believe it

```
 1   comes from -- it's for the defendant's safety due to an
 2   attempt to cooperate against --
 3               THE COURT:  I'm not asking whether you knew there
 4   was a separation.
 5               MR. LERER:  That it's causing problems?
 6               THE COURT:  I'm asking whether you knew Mr. Liounis
 7   was unable to consult with counsel because of the separation.
 8               MR. LERER:  I was not aware of that, and I will,
 9   right after this, inquire with the B.O.P. as to the details
10   of the separation, if the court wants.
11               THE COURT:  Anything else?
12               MR. LERER:  No, sir.
13               THE COURT:  Anything else?
14               MR. GOLD:  No, your Honor.
15               THE COURT:  Thank you very much.
16               (The proceedings are concluded.)
17
18
19
20
21
22
23
24
25
```

FREDERICK R. GUERINO, C.S.R.        OFFICIAL COURT REPORTER