UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------x

UNITED STATES OF AMERICA,

-against-                                                    ORDER OF CONTEMPT

PETER LIOUNIS, also known as                                 12 CR 350 (ILG)
"Mark Anderson," "Andrew Black,"
"James Weston," "Mike Solli,"
"Mike Slolli," and "Mike Sloli,"

                  Defendant.

---------------------------------------x

GLASSER, United States District Judge:

      The defendant, who was initially represented by counsel appointed in accordance with the Criminal Justice Act, 18 U.S.C. § 3006A, requested in the very early stages of the case, that his appointed counsel be discharged and he elected to exercise his constitutional right to represent himself and appear *pro se*. His request was granted after being assured that his election was being made voluntarily and knowingly and notwithstanding the Court's admonition regarding the disadvantages of proceeding *pro se* and that his election to do so was ill-advised. Standby counsel, Michael Gold, Esq., was appointed to assist him. He continued to represent himself for more than a year, until three days before the trial was to commence, when he was struck by the realization that he was ill-equipped to conduct his own trial and moved to withdraw his waiver of counsel. His motion was granted and Mr. Gold, who had more than a passing familiarity with all that had transpired in the intervening 12 months, was appointed to represent him. Mr. Liounis was clearly advised at that time that he was precluded from being represented by counsel and appearing pro se at the same time. He was not warned

then of adverse consequences that may resulted if he persisted in doing so.

The specific acts of misconduct of the defendant which drove the Court to summarily hold him in criminal contempt are reflected in the transcript of the trial. Relevant portions of it are hereafter set out:

> The Defendant:	Your Honor, I want to put something on the record.
>
> Mr. Gold:	What do you want to say?
>
> The Defendant:	I want to talk about my alibi.
>
> Mr. Gold:	Your Honor, I've instructed my client not to speak. He's insisting on addressing the Court against my . . . .

Tr. at 702.

> The Defendant:	Excuse me, Your Honor, I just want the jury to know that I'm testifying . . .
>
> The Court:	Excuse me.
>
> The Defendant (to the jury):	Before you make your decision. I am testifying. Please make sure I'm produced in this courtroom before you make your decision. I appreciate that. That's coming from me. Thank you very much. Thank you.

Tr. at 703.

> The Defendant:	And that will not change. Thank you.
>
> The Court:	Mr. Liounis, if I hear another outburst or anything like that from you again, you may be observing the rest of this trial on TV from a holding cell downstairs. Do you understand that?
>
> I told you early on you cannot be our own lawyer and be represented by a lawyer at the same time. You have ignored that instruction just now. I will not tolerate your ignoring it again. Do you understand that?
>
> The Defendant:	I do, Your Honor. Can you please just make sure my alibi witnesses are contacted and brought here?

>The Court: Excuse me. Talk to your lawyer if you have any inquiry you would like to make.
>
>The Defendant: He said he can't do it.
>
>The Court: Talk to your lawyer.
>
>The Defendant: He said he can't do it. I don't know why. I'm asking the Court why.
>
>The Court: Excuse me. Talk to your lawyer.
>
>The Defendant: Your Honor, this is my life on the line. They're my alibi witnesses.
>
>The Court: We are finished for this afternoon. I do not want to have any communication directly with you. Is that clear to you?
>
>The Defendant: Yes, sir.
>
>The Court: If you have anything you would like to inquire about, talk to your lawyer and he will inquire of me, but I do not want to hear from you. Is that clear?
>
>The Defendant: Yes, sir.
>
>The Court: And if I hear another outburst like the one I heard a little while ago, you will be watching the rest of this trial on television and make no mistake about it.

Tr. at 704-705.

Prior to his beginning to testify on his own behalf I cautioned him as follows:

>The Court: And, Mr. Liounis, before we proceed any further, I want to caution you about outbursts which are inappropriate. Just answer questions which are being put to you and nothing further. Do you understand that?
>
>The Defendant: Yes.

Tr. at 732.

During the course of his cross-examination, the transcript reflects:

3

>The Court:    Mr. Liounis, I don't want to have to continue to repeat directing you not to volunteer answers that you are not being asked a question about.  If the question is capable of being answered yes or no, I am directing you to answer it yes or no without making extemporaneous statements.  Is that clear?
>
>The Witness:    Yes.
>
>The Court:    I would also remind you that it is contempt to wilfully disobey an order of the Court.  Do you understand that?
>
>The Witness:  Yes.

Tr. at 767.

During the government's summation, the defendant interrupted with outbursts which required the Court to direct the jury to disregard them.  Tr. at 814-815.

In the interim between the conclusion of the government's summation and the defendant's, the transcript reflects the following:

>The Court:    And I would suggest, Mr. Gold, that you tell your client that I will seriously consider asking him to show cause why he should not be held in criminal contempt.
>
>Mr. Gold:    Yes, Your Honor.
>
>The Court:    If he continues to misbehave, I will have him moved out of the courtroom if he continues to act as obstreperously as he is.
>
>Mr. Gold:    I will.
>
>\*   \*   \*
>
>Mr. Gold:    Your Honor, once again, I've instructed Mr. Liounis not to discuss anything about this case, not to speak to the Court or make any comments whatsoever.
>
>The Court:    Mr. Liounis, if you persist, I will hold you in contempt and have you incarcerated.
>
>The Defendant:    You told me to ask him.  I asked him to say it.
>
>The Court:    I instructed you a long time ago that you can't act as your

4

> lawyer and be represented at the same time and I don't want to hear another word from you during the course of these proceedings.
>
> The Defendant: They said that that cell phone is no good, Your Honor. The cell phone was not found on me. I'm objecting to that. I'm objecting to the cell phone that was not found on me and I have a sworn affidavit to prove it.

Tr. at 820-821.

Notwithstanding those prior admonitions, his outbursts persisted during the reply summation of the government as appears at Tr. 874:

> The Defendant: Perfect, just like the trash you found. Nice. Perfect. Confession.
>
> \* \* \*
>
> The Defendant: It's not my voice on –
>
> The Court: Excuse me. Excuse me.
>
> The Defendant: Swear to God.
>
> The Court: Will the jury please step out for a few minutes?
>
> The Defendant: Swear to God. It's not me on those tapes. Believe me. And I didn't confess to nobody. Believe that. I am not going to be the fall guy. It's not going to happen. I don't give a shit.

(The following occurred in the absence of the jury.)

> The Court: Mr. Liounis, you forfeited the right to be present in this courtroom during the trial and I am going to direct that you be removed. I am also going to hold you in summary contempt of this Court for flagrantly disobeying and ignoring my Court orders continuously.
>
> Remove Mr. Liounis.

In conformity with Rule 42(b), Fed. R. Cr. P., I hereby certify that the foregoing was committed in my presence, was seen and heard by me and obstructed and disrupted the Court in its administration of justice.

5

Accordingly, I find the defendant guilty of criminal contempt.  In making this finding I am aware of the admonition to "guard against confusing offenses to [the Court's] sensibilities with obstruction to the administration of justice," <u>Brown v. United States</u>, 356 U.S. 148, 153 (1958), and am secure in the belief that I am obedient to it.

The defendant having been found guilty by a jury of the nine counts of mail, fraud, wire fraud and securities fraud with which he was charged, imposition of a sentence of incarceration would be cumulative with the sentence to be imposed for those crimes.  Having executed affidavits of indigency, a fine would be simply symbolic.  His apology for his obstructive behavior, Tr. at 926, is accepted in mitigation.  This judgment of criminal contempt which will be permanently stamped on his record is deemed to be sufficient and not excessive.  18 U.S.C. § 3553(a).

SO  ORDERED.

Dated:      Brooklyn, New York
            February 18, 2014

                                                _____s/_____
                                                I. Leo Glasser