TRULINCS 48332054 - LIOUNIS, PETER - Unit: BRO-I-C

--------------------------------------------------------------------------------------------- \ oF 28

FROM: 48332054
TO:
SUBJECT: RULE 33 COVER PAGE PART 1
DATE: 07/16/2014 07:19:09 AM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X
UNITED STATES OF AMERICA,
                        PLAINTIFF

V.                                                          Docket  Cr 12-350 (ILG)

PETER LIOUNIS,
                  DEFENDANT
-------------------------------------X

I humbly ask the court to give such leeway "counts are" for example to construe a pro se litigants pleadings and motions liberally. The United States Supreme Court holds allegations of a pro se complaint to less stringent standards that formal pleadings drafted by a lawyer. See Haines v. Kerner 404 U.S. 519.

## INTRODUCTION

Peter Liounis brings this Pro-se motion pursuant to Federal Rules of Criminal Procedure 33, 48(b) and 12(b)(3). For the following reasons , these grounds either individually or collectively, Brady violations, speedy trial violations and violations of his Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment rights to the US Constitution and Newly discovered evidence and Ineffective assistance of Counsel and Prosecutorial misconduct and Abuse of discretion/Bias and respectfully submits that his convictions must be reversed, all charges dismissed with prejudice, dismissal of indictment 1:12-cr-350-1 with prejudice or new trial be granted. Alternatively a hearing be granted on the motion and please provide the grand jury transcripts for indictment 1:12-cr-350-1 a long with all voting and attendance records for all grand jurors who heard evidence as it relates to Peter Liounis.

## RELEVANT FACTS

On 2/14/12 the government filed complaint 12-mj.00381 USA v. Vasquez in the Southern District of New York.

On 4/17/12 the government re filed the Vasquez complaint 12-MJ-00381 in the eastern district of New York naming Roman Tsimerman and Ruslan Rapoport as defendants and naming Peter Liounis "defendant " in the 54 page storyline. see complaint 12-381M-MDG.

On 4/17/12 the government filed another 54 page complaint 12-379M-MDG naming Peter Liounis as a defendant.

When you compare all the complaints listed above they are identical.

On 4/17/12 between 2-3pm  peter Liounis was illegally arrested without a valid arrest warrant by the El Dorado squad located at JFK Airport. The said affidavit in support of arrest warrant filed on 4/16/12 a long with the arrest warrant which was signed by Magistrate Marylin Go on 4/16/12 has been intentionally concealed and amended with a pencil by the government. The government has refused to hand over the said documents for over 2 years despite a court Order from Magistrate go to turn them over to the defendant. The intentional concealment has caused the defendant massive prejudice affecting the unlawful arrest and incarceration and unlawful evidence obtained which was introduced at the defendants trial. Liounis was pulled over by 5 vehicles, with guns drawn agents pulled the defendant out of the vehicle put him in handcuffs and DIDN'T read the defendant his Miranda rights. The vehicle the defendant was driving was searched without permission. The defendant was transported to a warehouse located at JFK Airport for a pre planned custodial interrogation against his free will. Upon arrival agents asked the defendant to remain quiet while they play some phone recordings. Once the recordings ended the agents asked the defendant questions, the defendant didn't answer any questions and demanded a lawyer. The defendant did not get a lawyer call or lawyer and was not set free but instead called a "a real piece of shit" and locked in a hot dusty holding cell for hours until collapsing to the floor. The defendant suffers from sinuses, allergies and asthma. Agents rushed in and helped the defendant walk into a cafeteria where the agents fanned the defendant and gave him cold water and pretzels but NO ambulance.  Agents drove back to Staten Island to retrieve the defendant's bag of medications located in the vehicle the defendant was driving when he was arrested. During this time the agents began questioning the defendant again. The result an

TRULINCS 48332054 - LIOUNIS, PETER - Unit: BRO-I-C

--------------------------------------------------------------------------------------------------

involuntary, coerced, fabricated statement that was not signed, not sworn and no video. The defendant was processed at 9:30 Pm almost 7 hours after arrest. The defendant was taken down the hall to a medical facility at midnight after agents supplied the defendant with all his medications and after the medical emergency. Agents waited almost 4-5 hours after the defendant was given all his medications due to the medical emergency to make it appear as if nothing ever happened and the defendant is fine.

On 4/18/12 at 6 AM agents conducted a search at the defendants home located at 59 Genesee avenue, Staten Island New York 10308. Alarmingly The defendant was arrested prior to the search warrant being signed and the said search. the residence is located on the second floor a 3 bedroom apartment. the defendant rents one bedroom, Scott Paccione and Shantay Monroe have a bedroom and Mike Slali has the last bedroom. The defendant has lived with all his roommates almost 2 years. agents searched the entire home, all the vehicles and all the residence garbage cans a long with our neighbor's garbage cans.  agents were shocked to find the real Mike Slali and immediately screamed at Slali to produce identification. agents confiscated a computer located in Slali's room and also confiscated a throw way phone and some investor leads also found in Mike Slali's room, None of the items confiscated belonged to Peter Liounis and none of the said items related to any crimes at all. however they were introduced at the defendant's trial. All the the defendant's roommates were interviewed and all their statements stated the same thing " explaining that Peter Liounis is innocent" .

On 4/18/12 at 11 AM the defendant was produced for an arraignment on complaint M12-379 almost 20 hours after his illegal arrest. the defendant plead not guilty in front of Magistrate Marylin Go. The defendant was appointed Attorney Kelley Sharkey by the court. Attorney Kelley Sharkey waived the defendants preliminary hearing against the defendants wishes. See criminal docket 1:12-cr-00350 (ILG) entry #6 Log # 5:34-5:39 listen to recording Mrs. Sharkey says the words "the defendant waives preliminary hearing" and the defendant begins arguing with her to stop. Sadly Sharkey waived the preliminary hearing knowing the defendant was not getting bail that day. Moreover Sharkey doesn't alert the court that Mike Slali is a real person who lives with the defendant almost 2 years instead she knowingly misrepresents Peter Liounis as Mike Slali to the court.

On 5/25/12 Liounis was arraigned on indictment CR12-350 (ILG). The arraignment took place in front of Honorable District Judge Leo Glasser. Kelley Sharkey handed defendant a fraudulent, amended, null and void indictment with a guideline range of 30 years to life. The government unlawfully amended the said indictment with a pencil by adding conspiracies, changing names, changing dates, adding 265 victims, over 15 million in victim losses, adding charges and counts. The said indictment and arraignment are both in violation of the Speedy trial act 18 U.S.C 3161(b) requiring dismissal pursuant to 18 U.S.C. 3162(a)(1) as it relates to Peter Liounis. The government also amended the following documents related to the null and void indictment as it relates to Peter Liounis. 1) See Calendar minutes ON GRAND JURY PRESENTMENT Magistrate Levy is crossed out by hand, Magistrate Mann is added by hand.  However the said indictment is voted to Magistrate Pohorelsky. The document has never been filed on ECF and is not signed by a deputy clerk. 2) See INFORMATION SHEET CR12-350 under related docket numbers M12-079 related to Defendant James McLaughlin and Magistrate Pohorlesky is replace using a pencil with M-12-379 related to Peter Liounis the defendant. Moreover See PRESENTMENT SHEET TO THE GRAND JURY dated 5/17/12, Alarmingly the caption names Peter Liounis and Ruslan Rapoport  as Co-defendants prior to the true bill being voted.

See docket 1:12-cr-00350(ILG) entry's 19, 20, 21, 22 and 23. see Exhibit 8 and 8-1The defendant's girlfriend writes a letter to the court on the defendants behalf explaining the egregious misconduct by the government and attorney Kelley Sharkey. The defendants asks the court for sanctions, a new attorney and for all charges to be dismissed relating to the fraudulent indictment as it relates to Peter Liounis. Moreover the letter clearly states speedy trial violations. Judge Glasser denied all relief requested and doesn't appoint new counsel. Alarmingly in entry 23, Sharkey states she requests a 60 day continuance in order to review the large amount of discovery. The said discovery is related to crimes which the grand jury has not brought against her client Peter Liounis.

 Between 4/17/12 date of Liounis arrest  and 1/08/13 date Attorney Kelley Sharkey was finally terminated from the case, Sharkey intentionally gave unauthorized extensions and exclusions of time, failed to prepare the case, waived the defendants preliminary hearing, handed the defendant a fraudulent amended null and void indictment Not brought by a grand jury as it relates to Peter Liounis, Lied to the defendant about court being cancelled because the court wasn't taking cases that week when in fact the court was taking cases, failed to prepare the case, take the time to understand the case, didn't timely comply with numerous deadlines filing pre trial motions using the excuse voluminous discovery for 10 months of pre trial motion preparation period KNOWING the grand jury did not bring charges against her client Peter Liounis for the said crimes and discovery, refused to file a motion to dismiss based on speedy trial violations as it relates to Peter Liounis, refused to file motions challenging the unlawful detention in violation of the defendants right to due process, refused to file any pre trial motions KNOWING that the indictment in the instant matter contained procedural and factual errors which render it null and void and forecloses the jurisdiction of the district court as it relates to Liounis. Moreover on 12/20/12 in the legal visit room at MDC Brooklyn Sharkey and the defendant had a blowout concerning pre trial motions due the next day. Sharkey showed up with no work product in hand and insisted she was filing my personal trial notes as my pre trial motions. The defendant fired

TRULINCS 48332054 - LIOUNIS, PETER - Unit: BRO-I-C

--------------------------------------------------------------------------------

Sharkey on the spot and told Sharkey not to file any motions on his behalf. The incident was logged in the legal visiting room log book see Exhibit 101. The very next day Sharkey vindictively filed pre trial motions a long with my personal trial notes. The trial notes filed publically on ECF contained the defendants trial defense strategy. Judge Glasser produced Liounis and Attorney Sharkey in court to discuss the situation. Sharkey Lied to Judge Glasser by stating she was not fired by the defendant on 12/20/12, the defendant told her to file the defendants personal trial notes and Sharkey denied waiving the defendants preliminary hearing. Clearly Sharkey is lying under oath because she filed the said motions and notes the day after the defendant fired her. Judge Glasser made it very clear of course after believing Mr. Sharkey that he's AGAIN NOT appointing the defendant new counsel the only choice is continue with Sharkey or proceed Pro-se. Judge Glasser Ordered the Sharkey pre trial motions stricken from the record. However after Liounis asked the court for disbarment of attorney Kelley Sharkey for vindictively filing the defense trial strategy publically and for lying to the court under oath Judge Glasser NOW terminates the already stricken Sharkey pre trial motions. I was left no choice but to proceed Pro-se Sharkey and i couldn't even be in the same room at this point. Defendant was denied his Sixth Amendment right to conflict free representation/ effective assistance of counsel/ and a speedy trial Throughout the pre trial proceedings.

Between the dates of 4/18/12 and 9/20/12 Roman Tsimerman gave the government 5 straight months of continuances to file an indictment or information. Mysteriously Ruslan rapoport who is Roman Tsimerman's co defendant on complaint M12-381 NOW appeared on the caption of indictment CR12-350 with Peter Liounis as co defendants prior to the true bill on 5/17/12. Alarmingly at the time the unlawful indictment was filed on 5/17/12 the Tsimerman and Rapoport complaint M12-381 and the Liounis complaint M12-379 both remained open.

TRULINCS 48332054 - LIOUNIS, PETER - Unit: BRO-I-C

---------------------------------------------------------------------------------------------------------------------

FROM: 48332054
TO:
SUBJECT: RULE 33 PART 1
DATE: 07/13/2014 05:47:32 PM

ALL CHARGES AGAINST PETER LIOUNIS MUST BE DISMISSED WITH PREJUDICE AS THE INDICTMENT FAILED TO
INVOKE THE COURTS JURISDICTION AND VIOLATED THE DEFENDANTS FIFTH AMENDMENT RIGHT TO INDICTMENT
BROUGHT BY A GRAND JURY MOREOVER BASED ON NEWLY DISCOVERED EVIDENCE THE SAID AMENDED
INDICTMENT IS NULL AND VOID.

Indictment 1:12-cr-350-1 was amended by the Court / Prosecutor with a pencil on more than one occasion as it relates to
Liounis. The said indictment cannot be changed without resubmission to the grand jury. The said indictment and convictions are
null and void as it relates to Liounis. See Ex Parte Bain. Peter Liounis is a U.S. citizen who never waived his Constitutional
right to an indictment BROUGHT by a grand jury. The District Court does not have the authority punish Peter Liounis on a null
and void indictment. (no jurisdiction).  Moreover the amended null and Void indictment was done in bad faith in a clear attempt
to circumvent Liounis's due process rights in violation of the FOURTH, FIFTH, SIXTH, EIGHTH, and FOURTEENTH
amendments to the US Constitution.

The Fifth Amendment guarantees that prosecutions for serious crime may only be instituted by indictment . The indictment as a
charging instrument has been recognized to have two chief purposes, first to apprise the accused of the charges against him,
so that be may adequately prepare his defense, and second to describe the crime with which he is charged with sufficient
specificity to enable him to protect against future jeopardy for the same offense.

But these are not the only purposes of the indictment provisions of the Fifth Amendment. The Fifth Amendment requires that an
indictment be brought by a grand jury . The grand jury is interposed "to afford a safeguard against oppressive actions of the
prosecutor or a court ". The decision to hale a man into a court is a serious one, subject to official abuse . For this reason, 12
ordinary citizens must agree upon an indictment before a defendant is tried on a felony charge . The content of the charge, as
well as the decision to charge at all, is entirely up to the grand jury -- subject to its popular veto , as it were. The grand jury's
decision  not to indict at all, or not to charge the facts alleged by the prosecutorial officials, is not subject to review by any other
body . Rule 6(f) of the Federal Rules Of Criminal Procedure provides: " An indictment may be found only upon the concurrence
of 12 or more jurors." And rule 6(c) emphasizes the requirement that 12 jurors shall "find" each indictment by its provisions that
the foreman " shall keep a record of the number of jurors concurring in the finding of every indictment. The requirement of the
criminal rules that every indictment must be "found" by at least 12 grand jurors is a further specification of the Fifth
Amendments command that " no person shall be held to answer for a capitol, or otherwise infamous crime, unless on
presentment or indictment of a grand jury.

The sweeping powers of the grand jury over the terms of the indictment entail very strict limitations upon the power of
prosecutor or court to change the indictment found by the jurors, or to prove at trial facts different from those charged in that
indictment . Since the grand jury has unreviewable power to refuse indictment , and to alter  a proposed indictment, proof at trial
of facts different from those charged cannot generally be justified on the ground that the same facts were before the grand jury
and that the jurors might or even should have charged them .

Supreme court decisions on amendment of the indictment support these principles as necessary inferences from the guarantee
of indictment by a grand jury. in the leading case of Ex parte Bain , 121 U.S 1,7 S. CT. 781,30 L. Ed . 849 (1887), the
defendant, an officer of a banking association, was charged with making a false report " with intent to deceive the Comptroller of
the Currency {413 F . 2d 1067 } and the agent appointed to examine the affairs of said association. " On motion by the
Government, the trial court ordered the italicized word struck out as surplusage. The supreme Court set the conviction aside. In
reply to the trial judge's argument " that the grand jury would have found the indictment without this language, " the Court
stated :

   " But it is not for the court to say whether they would or not. The party can only be tried upon the indictment as found by
such grand jury, and especially upon all its language found in the charging part of that instrument. How can it be said that , with
these words stricken out, it is the indictment which was found by the grand jury ? If it lies within the province of a court to
change the charging part of an indictment to suit its own notions of what it ought to have been, or what the grand jury would
probably have made it if their attention had been called to suggested changes, the great importance which the common law
attaches to an indictment by a grand jury, as a prerequisite to a prisoner's trial for a crime, and without which the Constitution
says 'no person shall be held to answer, ' may be frittered away until its value is almost destroyed ." 121 U.S. at 9-10 , 7 S. Ct.
at 786. Indictment 1:12-cr-350-1 was massively amended by the Court / prosecutor on more than one occasion as it relates to
Liounis. The said indictment was changed with a pencil, without resubmission to the grand jury. Liounis never waived his

Case 1:12-cr-00350-ILG Document 227 Filed 07/21/14 Page 5 of 28 PageID #: 2745

TRULINCS 48332054 - LIOUNIS, PETER - Unit: BRO-I-C
-------------------------------------------------------------------------------------------------- 5 of 28

Constitutional right to an indictment brought by a grand jury. The said indictment and convictions are NULL and VOID as it relates to Peter Liounis.

The Supreme Court has continued to adhere to the Bain principle in recent years. In Stirone v. United States , 361 U.S.212,80 S. Ct. 270, 4 L. Ed .2d 252 (1960) , the grand jury charged a violation of the Hobbs Act. It found that the interstate commerce affected was the victim's shipment of sand from various other states to his plant in Pennsylvania. The trial judge allowed the Government to introduce evidence of interstate commerce other than that charged, the movement of finished steel from the victim's plant outward to other states . The Court set aside the conviction, holding that the proof at trial of these uncharged facts amounted to an amendment of the indictment with respect to the element of interstate commerce . The Court relied on Bain , and quoted extensively from the passage set out above .

In Russell v . United States , 369 U.S. 749, 82 S. Ct . 1038 , 8 L . Ed . 2d 240 (1962) , the Supreme Court held that a bill of particulars cannot cure a fatally imprecise indictment . The bill of particulars fully serves the functions of apprising the accused of the charges and protecting him against future jeopardy , but it does not preserve his right to be tried on a charge found by a grand jury . The Court again cited the passage from Bain , referred to " the settled rule in the federal courts that an indictment may not be amended except by resubmission to the grand jury , unless the change is merely a matter of form ," and stated :

"To allow the prosecutor , or the court , to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guarantee of the intervention of a grand jury was designed to secure . For a defendant could then be convicted on the basis of facts not found by , and perhaps not even presented to , the grand jury which indicted him . "

In Bain , Stirone and Russell the Supreme Court has shown that it takes seriously , and requires to be enforced rigorously , the Fifth Amendment's command that a defendant to a charge of " infamous crime "be tried only on an " indictment of a Grand jury ." Again when the indictment is filed with the court no change can be made in the body of the instrument by order of the court, or by the prosecuting attorney, without a resubmission of the case to the grand jury. And the fact that the court may deem the change immaterial, as striking out of surplus, makes no difference. The instrument, as thus changed, is no longer the indictment of the grand jury which presented it. Trial on a changed indictment "VOID". See Ex Parte Bain.

Please See exhibit 1, Newly discovered evidence presentence investigation report docket 0207 1:12 CR 00350-001 Page 28 paragraph 12 states " Although Liounis was NOT CONVICTED OF OR CHARGED with the Rockford Group and the UBS scheme also known as the General Motors IPO he is nevertheless accountable for the associated losses as relevant conduct pursuant to USSG ss 1B1.3 ". Also See page 13 paragraph 31 states " Liounis was convicted at trial of counts 1 through 9 of the REVISED INDICTMENT. Clearly exhibit 100 states Liounis is indicted by a grand jury for the said schemes. The said indictment is null and void including the convicted Grayson Hewitt charges which were also added with a pencil.

See exhibit 100 VOID amended Indictment CR12-350 filed 5/17/2012 relating to Liounis. The said indictment is amended by the prosecutor/court more than once, adding all the following with a pencil: Counts, charges, aliases, extending conspiracy dates, adding/removing defendants names, adding the following schemes : 1) The Rockford Scheme consisting of $11,000,000 in losses and approximately 200 victims, 2) The UBS/General Motors IPO 3) Grayson Hewitt scheme 60 victims and $4,000,000 in losses. The unlawful amendments affected all the counts relating to the amended void indictment 1:12-cr-350-1 and Peter Liounis. The Indictment cannot be changed without re-submission to the Grand Jury -Trial on a changed Indictment "VOID". Liounis never waived his constitutional right to indictment brought by a grand jury. Ex Parte Bain. Alarmingly exhibit 100 is certified.

Also see exhibit 99, the revised indictment.

This VOID indictment is amended again by the prosecutor/court 16 months after the massive amendment on 5/17/2012 relating to Liounis. Now the Government attempts to sanitize the massive amended void indictment, again by using a pencil. Liounis never waived his constitutional right to have an indictment brought by a grand jury. Moreover this amended indictment isn't signed by a grand jury foreman. Ex Parte Bain the said indictment cannot be changed without resubmission to the grand jury - trial on a changed indictment "VOID".

Also see exhibit 98

This VOID indictment is the result after 2 massive amendments by the court / prosecutor using a pencil related to Liounis. This indictment is also not signed by a grand jury foreman as it relates to Liounis. Peter Liounis never waived his constitutional right to have an indictment brought by a Grand Jury.

TRULINCS 48332054 - LIOUNIS, PETER - Unit: BRO-I-C
--------------------------------------------------------------------------------

- Ex-Parte Bain - Indictment cannot be changed without re-submission to the Grand Jury.  None of the exhibit's 99, 98 or 100 are superseding indictments, they are all the direct results of massive amendments by the court/prosecutor with a pencil. By-passing due process of law in its entirety.

Also see exhibits related to Roman Tsimerman 69, 95, 94, 93, 92, 91, 90, 89, 88, and 85. The government used Roman Tsimerman as the prosecutorial arm to commit fraud on the court, defense and grand jury. MR. Tsimerman was already charged in the Grayson Hewitt scheme. Tsimerman then gave the government continuances for 6 straight months to file an information or indictment . The government then dismissed the complaint against Tsimerman who agreed to plead guilty via information, waiving his right to indictment. The government then joined Tsimerman to the Grayson Hewitt Scheme and Peter Liounis AGAIN. There was no need to join Tsimerman to the case AGAIN because he already plead guilty via information and Liounis was going to trial. Tsimerman was used in an attempt to sanitize and further conceal the void amended indictment 1:12-cr-350-1 as it relates to Liounis.

On 2/14/12 a complaint was filed US v. Vasquez 12-mj-00381 see exhibit 85. It appears that the Vasquez complaint is a prosecutorial and investigative ruse designed to vest unconstitutional jurisdiction in the district court. On 4/17/12  Liounis was unlawfully arrested with a fraudulent arrest warrant. It appears the Vasquez complaint which the government refuses to turn over for over 2 years was utilized to effect the unlawful arrest in violation of Liounis's due process rights. Between the date of arrest ruse on 4/17/12 and 5/16/12 the United States failed to bring an indictment as it relates to Liounis, this is in violation of 18 USC ss 3161(b), requiring dismissal pursuant to 18 USC ss 3162 (a)(1). As applied to the speedy trial act and the 30 day time frame to indict incident to arrest. The alleged arraignment on 5/25/12 was also beyond the 18 USC ss 3161(b), requiring dismissal pursuant to 18 USC 3162 (a)(1). see exhibit 86 Alarmingly Liounis and Rapoport are named as defendants on the caption prior to the true bill.

.

.

TRULINCS 48332054 - LIOUNIS, PETER - Unit: BRO-I-C

--------------------------------------------------------------------------------

FROM: 48332054
TO:
SUBJECT: RULE 33 COVER PAGE PART 2
DATE: 07/16/2014 12:33:50 PM

SEE CRIMINAL DOCKET FOR CASE # 1:12-cr-00567-IGL-1 USA v. Tsimerman Entry's 20 and 21 AUSA Pamela Chen And AUSA Dan Spector Make there notice of appearance For the Grayson Hewitt case AGAIN. Also See entry's 23, 24 and 25 Mr. Tsimerman Now waives indictment and pleads guilty to information. Mr. Tismerman is then joined with Peter Liounis and the Grayson Hewitt Scheme AGAIN using a rule 50.3.2. The government is clearly using Tsimerman as the prosecutorial arm to commit fraud on the defense, the court and the grand jury. Moreover Mr. Tsimerman is being used to further conceal the unlawful amended NULL and VOID indictment 1:12-cr-350-1 as it relates to Peter Liounis and to further conceal that a grand jury DID NOT BRING AN INDICTMENT AS IT RELATES TO LIOUNIS. SEE CRIMINAL DOCKET FOR CASE # 1:12-cr-00350-ILG-1 Entry 28 The very next day after Tsimerman pleads guilty to information, Liounis is produced in court on 9/21/20. AUSA Pamela Chen and AUSA Dan Spector are both present and attorney Kelley Sharkey NOW DECIDES TO ASK THE COURT FOR A 90 DAY PERIOD TO FILE SPECIFIC PRE TRIAL MOTIONS. Kelley Sharkey was well aware of the amended NULL and VOID indictment as it relates to Peter Liounis and just played a long.

On 1/09/13 Judge Glasser appointed Attorney Michael Gold as standby counsel to assist the defendant proceed pro se.

On 2/06/13 The Pro-se defendant filed pre trial motions see docket 1:12-cr-00350-ILG-1 entry's 47 and 48. The defendant filed a long list of pre trial motions including a BRADY motion. Moreover The defendant Clearly attacks the validity of the Null and VOID amended Indictment 1:12-cr-350-1 along with the invalid arrest warrant used for the illegal arrest as they relate to Peter Liounis.

On 2/27/13 The government filed a Memorandum of Law in opposition to defendants pre trial motions. The government conceals the Null and Void indictment 1:12-cr-350-1, the invalid arrest warrant and all the unconstitutionally obtained evidence as it relates to Peter Liounis.

On 8/12/13 Judge Glasser held a suppression hearing . Agent Delesio testified on behalf of the government and peter Liounis pro-se testified on his own behalf. AGAIN the government conceals the Null and Void indictment 1:12-cr-350-1 and the invalid arrest warrant used for the illegal arrest as it relates to Peter Liounis.

On 10/24/13 Liounis filed filed a motion reminding the court that Liounis was forced to proceed pro-se because the court left him no choice by refusing to replace Attorney Sharkey. Liounis also requested funding for Expert Witnesses, a private investigator and a paralegal to ensure the pro-se defendant receives a fair trial in accord with the Sixth amendment to the United States Constitution. See court Order dated November 6, 2013 Judge Glasser approves 4000 for a cell site expert but denies funding for a private investigator and a paralegal. judge Glasser also tells the defendant to file an affidavit under penalty of perjury that his voice is not the same voice as the fraudster's voice in order to receive funding for a audio forensic expert.

On 10/24/13 The government AGAIN amends indictment 1:12-cr-350-1 in an attempt to sanitize and further conceal the said Null and Void indictment as it relates to Peter Liounis.

Trial was set to begin on 1/27/14. The indigent defendant's family was able to raise some funds through donations in order to hire a lawyer for trial. A week prior to trial the defendant alerted the court that his family has retained attorney Ying Stafford to represent the defendant at trial. The defendant asked the court for a 30 day continuance to give Ying Stafford time to prepare for trial. The court denied the continuance and made it clear that he's not denying the defendant his Sixth amendment counsel of choice because she could still represent the defendant at trial with less than a week to prepare. Ying refused to be trial counsel with less than a week to prepare.The court also made it clear that if the defendant chooses to proceed pro-se at trial the court will not give the defendant LEEWAY, and there will be no opening statements allowed at the said trial for the defense or the government therefore the only way the defendant will be able to introduce his evidence at trial is by following the strict rules of admissibility of evidence. Judge Glasser continued by stating if the defendant chooses the court will appoint standby counsel Michael Gold to represent the defendant at trial. The defendant AGAIN was denied EFFECTIVE ASSISTANCE OF COUNSEL and denied his Sixth amendment right to trial counsel of his choice. Under the very unfair stressful circumstances and under duress Liounis chose standby counsel Michael Gold to represent him. Mr. Gold stated that he was even uncomfortable taking this case with 3 days to prepare for trial when as standby counsel he never once looked that the case or any discovery. The court replied even with 3 days to prepare for trial Mr. Gold will do a better job than Liounis.

Trial began on 1/27/14. The trial lasted 10 days, on February 5, 2014 the defendant was found guilty on all 9 counts. Prior to Attorney Michael gold filing the rule 29 on March 4, 2014 Judge Glasser produced the defendant and Mr. Gold to court to

TRULINCS 48332054 - LIOUNIS, PETER - Unit: BRO-I-C

---

discuss a conflict of interest. However the court took no action. After the rule 29 was filed the court again produced the defendant and Mr. Gold to discuss the same said conflict of interest this time the court relieves Mr. Gold from the case. The defendant asked the court to replace Mr. Gold with conflict free counsel and the court refused the request. The defendant is forced AGAIN to proceed Pro-se and once again has no help in filing a motion for a new trial for inneffective assistance of counsel, newly discoved evidence, PSR Objections and a sentencing memorandum.

The defendant also submits the following list of newly discovered evidence all discovered after trial in support of the the relief requested in this motion:

1) Michael Gold email which states the arrest warrant used for the illegal arrest of Liounis doesn't exist.

2) PSR Which clearly proves the Null and VOID indictment 1:12-cr-350-1 was in fact amended with a pencil as it relates to Liounis, There was no valid arrest warrant issued or used on 4/17/12 the date of the Liounis illegal arrest. The government withheld voice analysis test results from the Rockford funding scheme and the UBS scheme also known as the General Motor's IPO in violation of BRADY. The said voice analysis results are exculpatory evidence. Moreover Liounis would of been able to use the intentionally concealed recordings and results of the voice analysis to prove his innocence in the 3rd scheme Grayson Hewitt since the government alleges that Liounis is the same person in all 3 schemes. Alarmingly the government concealed the exculpatory voice analysis results. The defendant truly believes the government is also concealing voice test results the government conducted comparing the Liounis voice with the confirmed fraudster's voice which is also in violation of BRADY and exculpatory. When Liounis offered to take any voluntary voice test the government opposed. When Liounis requested funding for an audio forensic expert the government opposed. The government uses voice recognition, voice print analysis and voice analysis to convict. However when it comes to Liounis now the government claims these test are unreliable. The government wants it both ways. If the said tests are unreliable there's many innocent people in prison.

3) The government withheld all voice test results conducted with victims of the Grayson Hewitt fraud whom testified and Ed Moldren who also testified. The said results are exculpatory to the defendant because the victims identified someone else as the person who called them as the fraudster NOT Peter Liounis.

4) Prior to trial Liounis Pro se submitted to the court a list of witnesses and alibi witnesses the defense will call at trial and asked the government to provide all 3500 material and agent notes from all interviews for each witness. After trial Liounis called his alibi witness, friend and roommate Scott Paccione and asked why he didnt testify on behalf of the defendant. Mr paccione stated that the defendants trial counsel never called him before or during the trial. He also stated on the 7th day of trial Mr Paccione received a visit from government agents at his home in Staten Island New York. Mr. Paccione stated on the recorded phone call that agents told him that Liounis blamed him for the said crimes and that he needs to hire a lawyer. Moreover that if Mr. Paccione testify's for the defendant Mr. Paccione will be charged with obstruction of justice. The agents then playeded tapes for Mr. Paccione and his wife Shantay Monroe whom were both scared to death by the agents behavior which is clearly obstruction of justice. Seven days into trial and the government never handed over the exculpatory 3500 material from the interviews conducted with Scott Paccione, Shantay Monroe and Mike Slali during the search of the Liounis residence on 4/18/12 this is in violation of BRADY. The government ONLY hands over the new 3500 material which was the result of the obstruction of justice the night before. The government now states to the court that they are calling Scott Paccione and Shantay Monroe as Government Witnesses and never called them. The obstruction of justice was intentionally done to avoid handing over the exculpatory 3500 material in violation of BRADY and to make sure Liounis doesnt call both his alibi witesses at trial. Scott Paccione states on the recorded phone conversation that he told the agents that Peter Liounis was innocent during all the interviews. See recorded phone conversation from MDC Brooklyn unit i-63 on 2/24/14 Liounis calling Mr. Paccione cell phone.

5) Prior to trial Liounis pro-se asked the government to provide all complaints and dispositions filed against all agents who are testifying for the government at the Liounis trial. The government only turned over complaints for agents who didnt testify. Liounis asked for the complaints in good faith only for impeachment purposes. The government did not comply.

6) The defendant received his trial transcripts on June 16 2014. The defendant was held in contempt of court during trial because his trial attorney michael Gold told the jury 7 times that he's guilty after the defendant testified under oath that he was innocent. The defendant didnt hear the jury instructions. Alarmingly Mr Gold waived the defendants appearance when Judge Glasser brought the jury in to thank them for there services, as a result see page 919 of trial transcripts the court tells the jury " YOU CAN TAKE THOSE IN". The jury never sent a note asking for the said tapes and transcripts and Scott Paccione and Shantay Monroe 3500 material all of which was not introduced at trial as evidence. The Court caused the defendant massive prejudice because in the 3500 material my roommate Shantay Monroe recklessly identifies my voice as the same voice as Mark Anderson while under duress. The jury came back with a guilty verdict right after the Courts actions. Although Mr. gold later objected and the court sustained the objection the damage was done it was to late. Mr. Gold should of asked for a mistrial.

TRULINCS  48332054 - LIOUNIS, PETER - Unit: BRO-I-C
-----------------------------------------------------------------------------------------------------  9 of 28
-----------------------------------------------------------------------------------------------------

7) After trial the Supreme Court ruled on 2 cases 1) ROSEMOND v. UNITED STATES NO. 12-895. 2) HINTON v. ALABAMA
NO. 13-6440.

Upon a defendants motion, federal rules of criminal prcedure 33 permits the court to vacate any judgement and grant a new trial
if teh interests of justice so requires. (Fed.R Crim P. 33). Indeed, the rule provides courts with broad discretion to set aside a
jury verdict and order a new trial to avert a perceived miscarriage of justice. United States V. Washington, 263 F. Supp. 2d 413,
420 (D.Conn. 2003)). A court should not grant a new trial based on newly discovered evidence under rule 33 unless the
following critera are met: "(1) The newly discovered evidence could not with due diligence before or during trial; (2) Where the
claim is that the evidence shows perjury by a prosecution witness, the evidence demonstartes that the witness is in fact
comitted perjury; (3) the evidence is material ; (4) The evidence is not cumulative of other evidence introduced at trial; and (5)
The evidence could have affected the jury's verdict if it had been introduced at trial." United States v. Walker, 1998 U.S. Dist.
LEXIS 17203 at *4 (N.D.N.Y Oct 30, 1998) citing United States v. Lowen, 1998 U.S. App. Lexis 22187 (2d Cir. N.Y. Mar 26.
1998); United States v. Locasion, 6 F.3d 924, 949 (2d Cir N.Y. 1993); United States v. White, 972 F.2d 16, 20-21 (2d Cir);
United States v. Zane, 507 F.2d 346, 347 (2d Cir N.Y. 1974)). A defendant has three years from the date of the verdict to file a
rule 33 motion grounded on newly discovered evidence. (Fed. R. Crim. P. 33).

TRULINCS 48332054 - LIOUNIS, PETER - Unit: BRO-I-C

--------------------------------------------------------------------------------

FROM: 48332054
TO:
SUBJECT: RULE 33 PART 2-A
DATE: 07/16/2014 11:50:10 AM

DUE PROCESS VIOLATIONS AND PREJUDICE TO LIOUNIS

   The Fourth Amendment mandates The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.( U.S. Cont. Amend. IV). The due process clause of the Fifth Amendment mandates that one will not be "deprived of life, liberty, or property, without due process of law. (U.S. Cont. Amend. V). The Sixth Amendment mandates in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and the district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and the cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have Assistance of counsel for his defense. ( U.S. Cont. Amend. VI). The Eighth Amendment mandates Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted. ( U.S. Cont. Amend. VIII). The Fourteenth Amendment mandates All persons born or naturalized in the United States, and the subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of laws. ( U.S. Cont. Amend. XIV). The following list below describes how the government has intentionally violated Liounis's due process rights of the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the US Constitution and the prejudice suffered:

1) The Governments failure to disclose the amended null and void indictment 1:12-cr-350-1 as it relates to Peter Liounis after Liounis filed a BRADY MOTION a long with the government attempting to later sanitize and further conceal the null and void indictment by amending it AGAIN amounts to unconscionable misconduct. Moreover Liounis was tried on the said amended null and void indictment. The indictment cannot be changed without resubmission to the grand jury. trial on a changed indictment is VOID. Liounis never waived his Constitutional right to indictment brought by a grand jury. SEE EX PARTE BAIN. see Exhibit 23 dated 5/17/12, the said document was never filed on ECF and never stamped by the clerk in fact the date on the document is hand written, Magistrate Levy is crossed out with a pencil and Magistrate Mann is added with a pencil. However the amended Null and Void indictment CR12-350 (ILG) was voted to Magistrate Pohorelsky. The document is not signed by a deputy clerk. Also see Exhibit 24 information sheet filed on 5/17/12, under related Magistrate docket numbers see docket No. M-12-0381 which relates to Ruslan Rapoport and Roman Tsimerman and see docket No. M-12-079 which relates to James McLaughlin see Exhibit 25 Someone crosses out M-12-079 related to McLaughlin and Magistrate Pohorelsky and replaces the docket number with M-12-379 related to Peter Liounis. Alarmingly see Exhibit 86 Peter Liounis and Ruslan Rappoport are named in the caption on the cover of the presentment sheet to the grand jury as defendants prior to the true bill. Federal Rules Of Criminal Procedure 12 governs pre trial motions and other motions which may be made while the case is pending. Specifically, 12(b)(3)(B) provides that at anytime while the case is pending the court may hear a motion alleging that the indictment fails to invoke the court's jurisdiction. The Liounis case is still pending at this time, Liounis motion to dismiss on grounds that the indictment failed to invoke the court's jurisdiction is timely made. See United States v. Capoccia, 354 Fed. App. 522, 523 (2d cir. Vt. 2009), United States v. Bernard Roemmele, 2011 U.S. Dist. LEXIS 113815 at *4 (S.D. Fla. Aug. 3, 2011). Additionally the government joined Peter Liounis with a fugitive co-defendant Ruslan Rapoport to gain a tactical advantage by passing the speedy trial 70 day clock and to further conceal that a grand jury DID NOT bring an indictment as it relates to Liounis.

2) The Government stated a man named mike Slali was a fictitious person who didn't live at the Liounis residence. As a result Liounis received United States postal packages in the name of Mike Slali.The government was wrong. Alarmingly the government submitted the reckless perjured affidavit in support of an arrest warrant for Peter Liounis to Magistrate Marylyn Go on 4/16/12 knowing Mike Slali is in fact a real person and knowing Mike Slai is living at 59 Genesee ave Staten Island NY 10308 with Liounis. See surveillance pictures of Mike Slali and pictures of Mike slali and peter Liounis standing together taken by arresting Agents on numerous occasions in front of the Liounis residence and in front of the United States Postal truck making a delivery to Mike Slali.. The said pictures were taken prior to the agents submitting there perjured affidavits. See trial transcript page 644 Delesio-direct-Lerer states under oath : On 4/1712 an arrest warrant was issued by a US Magistrate of this courthouse, He's lying under oath. On 4/17/12 Peter Liounis a United States citizen was illegally arrested without a valid arrest warrant. Liounis pulled out of his driveway between 2-3 pm, five vehicles began to follow the defendants vehicle for about 10 minutes. The vehicle was pulled over near a train station in Staten Island. Agents approached the vehicle with guns drawn screaming hands up get out of the vehicle. Liounis was searched, handcuffed, NOT read his Miranda Rights and placed in a transport vehicle. The said vehicle was also searched by agents. The defendant was taken to a Warehouse located near Kennedy Airport against his free will for a pre planned interrogation. After Liounis demanded a lawyer he was placed in a hot

dusty holding cell for hours until collapsing to one knee. Agents rushed in and helped Liounis walk into a cafeteria where agents fanned him, gave him water and pretzels but no ambulance. Liounis suffers from Sinuses, allergies and asthma. Agents drove back to Staten Island to retrieve Liounis's bag of medication in the vehicle. During this time the agents again interrogated Liounis. The said statement is Coerced, involuntary, fabricated, unlawfully obtained, not signed, not sworn and no video. Moreover Liounis never admitted to any participation in any crimes at all, however the agents version of the statement begins with on 4/17/12 Liounis was interviewed about HIS participation in the Grayson Hewitt Scheme, UBS scheme and the Rockford Funding Scheme. The Government has intentionally concealed the illegal arrest warrant signed by Magistrate Marylin Go on 4/16/12 for over 2 years despite an Order from Magistrate Marylin Go to hand over the said documents over. See suppression hearing transcripts dated August 12, 2013 pages 35-40. Clearly Agent Delesio under oath avoids the question regarding " Who gave you and your squad permission to arrest peter Liounis on 4/17/12." Moreover Agent Delesio attempts to avoid the Question by stating an arrest warrant was issued on 4/17/12 which was used for the Peter Liounis arrest " A LIE". Also see AUSA Dan Spector OBJECTING to all questions about " who gave the El Dorado Squad permission to arrest Peter Liounis on 4/17/12. Also see governments memorandum of law in opposition to defendants pre trial motions dated February 27th, 2013, page 7 AUSA Dan Spector states " On April 16th 2012 Magistrate Marylin Go signed an arrest warrant For Liounis. Liounis was arrested on the 4/17/12. Liounis was produced in court to be arraigned by Honorable Magistrate Judge Marylin Go 20 hours after the illegal arrest. The 20 hour delay was caused by an illegal pre planned custodial interrogations which resulted in a involuntary, coerced and fabricated statement which was not signed, not sworn and no video. Moreover the distance between the place of the illegal arrest in Staten Island NY and the Eastern District Court House is only a 30-35 minute car ride NOT 20 hours. See Common Wealth v. Powell, 2014 BL 1577201 Mass., NO. SJC-11362, 6/6/14 Supression of statement when delay between arrest and arraignment exceeds 6 hours. Also see United States v. Pimental, 2014 BL 175726, 9th cir., No. 12-50038 ( 6/24/14) Court states " The dalay in presenting Torres Pimental to a Magistrte in order to interogate him and Canales was unreasonable". The court also cited the McNabb / Mallory Rule. On 4/18/12 the very next day after the Liounis illegal arrest agents searched the Home of peter Liounis and during the search Agents were shocked to find The real Mike Slali. The agents also found a throw away phone and some investor leads in Mike Slali's room. The said items were not related to any of the charged crimes and didn't belong to Peter Liounis however they were introduced at trial. The agents also confiscated a computer which also had nothing to do with the charged crimes in contradiction to the agents sworn affidavitts which contained 13 pages of reasons why the said computer should be confiscated. The evidence includes the coerced, fabricated, involuntary, not signed, not sworn, no video statement, all the Mike Slali United states postal packages and there contents, all the people found during the search of Liounis residence on 4/18/12 Scott Paccione, Shantay Monroe, Mike Slali including all of there statements, Peter Liounis Atlantic city players cards, The Throw away phone and investor leads found in mike slali's room, all Metropolitan Detention center phone call Recordings and emails or any other evidence obtained at MDC during the unlawful detension of Peter Liounis. Alarmingly Liounis was illegally arrested before the search warrant for the Liounis residence was signed and before the search of the Liounis residence was done. Under McNabb v. United States , 318 U.S. 332(1943), Mallory v. United States, 354 U.S. 449(1957), and 18 U.S.C. ss 3501, confessions/statements obtained during a delay on presentment that is longer than six hours are inadmissible unless the delays were reasonable. Moreover as long as the delay was not for the purpose of interrogation. Also see Scopo 19 F.3d at 781 (citations omitted) any evidence seized based upon an illegal stop is subject to the fruits of the poisoness tree doctrine and may be suppressed. Also see e.g. U.S. v. Bonczek, NO. 08 cr. 361 (PAC),2008 U.S. Dist, LEXIS 87436, 2008 WL 4615853 at *13 ( S.D.N.Y. October 16, 2008) statement after illegal arrest was obtained impermissibly, as a result of a warrantless arrest... and must be suppressed. Also see United States v. Rafael Espino-Urvan, 2013 U.S. Dist. LEXIS 58470( S.D.N.Y. April 23, 2013) Where the government cannot show that a warrantless search falls within any exception to the warrant requirement the search is deemed unlawful and any evidence of tangible materials seized during the unlawful search and of the testimony concerning knowledge acquired during the unlawful search must be excluded. As the court finds that the arrest of MR. Espino-Urvano was unlawful, any statements made by MR. Espino-Urvan to law enforcement agents after his arrest must also be suppressed as the Fruit of the illegal arrest.

TRULINCS 48332054 - LIOUNIS, PETER - Unit: BRO-I-C

---------------------------------------------------------------------------------

FROM: 48332054
TO:
SUBJECT: RULE 33 PART 2-B
DATE: 07/13/2014 05:50:11 PM

3) On 4/18/12 Peter Liounis was produced in Magistrate Marylin Go's courtroom 20 hours after the illegal arrest to be arraigned on a one count complaint M12-379. Liounis was appointed Attorney Kelley Sharkey by the court. Mrs. Sharkey waived the defendants preliminary hearing and didn't ask for bail. Alarmingly Sharkey waived the preliminary hearing knowing that Mike Slali is a real person and he's my roommate almost 2 years and no bail. On 5/25/12 Peter Liounis was produced in Honorable district Judge Leo Glasser's courtroom to be arraigned on an indictment CR12-350(ILG). Prior to the arraignment Mrs. Sharkey handed Peter Liounis an amended NULL and VOID indictment which didn't belong to Peter Liounis. The said indictment had 17 charges with a guideline range of 30 years to life and contained many aliases in the caption. Alarmingly the complaint used for the Liounis arrest M12-379 remained open and the open complaint mirrored the amended Null and void indictment CR12-350 (ILG).

On 2/14/12 a complaint was filed US v. Vasquez 12-mj-00381 see exhibit 85. It appears that the Vasquez complaint is a prosecutorial and investigative ruse designed to vest unconstitutional jurisdiction in the district court. it appears the re filed Vasquez complaint was utilized to effect the illegal arrest in violation of the defendants due process rights. Between the date of arrest ruse on 4/17/12 and 5/16/12 the United States failed to bring and indictment as it relates to Peter Liounis, this is in violation of 18 U.S.C. ss 3161(b), requiring dismissal pursuant to 18 U.S.C. ss 3162(a)(1). As applied to the speedy trial act and the 30-day time frame to indict incident to arrest. Moreover the alleged arraignment on 5/25/12 was beyond the 18 U.S.C. ss 3161(b) permissible time frame and requires dismissal under 18 U.S.C. ss 3162(a)(1).

Peter Liounis was arraigned on 5/25/12 as of January 27th 2014 the start of trial Liounis has been in continuous custody for 651 days since his arrest, and 612 days since the arraignment on the null and void indictment 1:12-cr-350-1. Either of the dates referenced herein far exceed the 70 day trial clock provisions of the speedy trial act, especially when considering the unauthorized extensions and exclusions of time by assigned counsel Kelley Sharkey, who intentionally failed to prepare the case, take the time to understand the case or timely comply with numerous deadlines with filing pre-trial motions in the case. Liounis has asserted his right to speedy trial prior to trial and was finally taken to trial 21 months later on a null and void amended indictment. See Exhibit 9, which states that Attorney Sharkey requested the captioned matter be re-scheduled to Friday September 21st 2012, and consented to exclusion of time for Speedy Trial purposes. Sharkey didn't give a reason for the exclusion of time and Judge Glasser did not ask, he simply granted it. However when Liounis asked Ms Sharkey why we do not have court Sharkey replied that the court is not taking cases that week. The said recorded phone conversation is in my possession. The call took place at MDC Brooklyn on 9/14/12 the time was 2:46PM, duration of call was 7 minutes and 18 seconds. Liounis alerted the court about the illegal indictment CR12-350(ILG) and the egregious behavior by the government and attorney Kelley Sharkey. see Exhibit's 8 and 8-1

For 10 months Sharkey refused to file any motions with the court challenging the unlawful detention in violation of the defendants right to due process. Sharkey also refused to file any pre-trial motions knowing that the indictment in the instant matter contained procedural and factual errors which render it null and void. And forecloses the jurisdiction of the district court as it relates to Liounis. For ten months Sharkey used the excuse voluminous discovery, over 50,000 pages of discovery in order to keep delaying the process and to continue asking the Court for extensions in the filing of pre-trial motions. It should be noted that the charges relating to the voluminous discovery that Ms Sharkey was referring to had never been brought by the Grand Jury as it relates to her client Peter Liounis . Moreover Ms Sharkey's constant complaints to the Court regarding the sheer volume of discovery caused the court to deem the case as complex, see docket 1:12-cr-00350-ILG all defendants entry number 23. Between Sharkey intentionally delaying the pre trial motion preparation period for a 10 months, and Liounis filing motions to dismiss the intentionally concealed null and void indictment 1:12-cr-350-1. Liounis suffered presumptive and substantial prejudice for 21 straight months . After Liounis filed pre trial motions to dismiss the unlawful amended indictment 1:12-cr-350-1, rather than the government coming clean the government opted to further conceal the null and void indictment and attempted to cure the jurisdictional defect by amending the said indictment AGAIN. Additionally The Government joined Liounis with a fugitive co defendant to gain a tactical advantage to bypass the 70 day speedy trial clock and to further conceal the amended null and void indictment as it relates to Liounis. The 70 day time limit of the speedy trial act of 1974 had clearly elapsed as it relates to Liounis. See Bloate v US, Supreme Court 130 S.Ct 1345; 176L.Ed.2d 54; 2010 US lexis 2205, decided March 8th 2010, requiring dismissal with prejudice pursuant to 18 USC ss:3162(a)(2). After 10 months of suffering due to a conflict of interest with Attorney Sharkey's a long with her intentional ineffective assistance of counsel Liounis FIRED Mrs. Sharkey. After Liounis fired Mrs. Sharkey, She vindictively lied to the court under oath about being fired prior to filing pre trial motions on behalf of the defendant. Sharkey then did the unthinkable she vindictively filed the Peter Liounis trial notes as an Exhibit in her motion which clearly stated the Liounis trial defense strategy PUBLICALLY. See Exhibit 101 Incident report dated 12/20/12 from legal log book located at the MDC legal visiting room, Proving Sharkey was in fact fired prior to submitting the vindictive pre trial

---

motions and in contradiction to Sharkey swearing under oath to judge Glasser that she wasn't fired prior to filing the said pre trial motions. See Sharkey pre trial motions and declaration dated 12/21/12. Also see letter addressed to the court from AUSA Pamela Chen dated February 6, 2013 page 3 states: the government notes that with respect to the defendant's allegation that Ms. Sharkey improperly revealed the defendant's handwritten notes, Ms. Sharkey states in her declaration that she submitted the defendant's handwritten motion for a severance at the express direction of defendant Peter Liounis docket entry 35, See Sharkey declaration dated December 21, 2012. Clearly Ms. Sharkey is lying under oath about the defendant giving her permission to file his trial notes and the government is clearly hiding the fact that the said notes clearly describe the Liounis  trial defense strategy in black and white. Sharkey has also lied to the defendant about unauthorized extensions and exclusions of time, about court being cancelled because Judge Glasser was not taking cases when the court was in fact in session and taking cases, Sharkey also lied to Judge Glasser about waiving the defendants preliminary hearing during the arraignment in Magistrates Marylin go's Courtroom on 4/18/12. Honorable Judge Glasser asked Peter Liounis if he wants the Sharkey pre trial motions stricken from the record or terminated, Liounis chose stricken from the record and your Honor Ordered the said motions stricken. Soon after Liounis filed a motion with the court asking for Mrs. Sharkey to be disbarred from practicing law after vindictively filing the Liounis trial defense strategy publically and for lying under oath to the district court about being fired prior to filing the said motion. The district court takes no action against Sharkey and the court now takes the already stricken Sharkey pre trial motions and for some reason now Orders the said motion terminated.  Moreover the Sharkey pre trial motions under oath clearly stated Liounis has vehemently denied the use of any aliases, which in contradiction to her unethical behavior intentionally refusing to fight the case. Liounis Asked the court to PLEASE replace Attorney Sharkey with any lawyer the court chooses but was denied. District Judge Leo Glasser Made it clear either stay with attorney Sharkey or proceed Pro-se. At this point Liounis and Sharkey couldn't be in the same room Liounis was forced to proceed Pro-se.

PRESUMPTIVE PREJUDICE :

The SIXTH Amendment Speedy Trial guarantee attaches upon arraignment after indictment yet is controlling as to the STA time clock post indictment delay is presumptive prejudice requiring dismissal with prejudice. In U.S. -v- Lever, 358 F. Supp. 2d. 255, the court set out what is referred to as the four prong Dogget test for presumptive prejudice. (1) uncommonly long delay (2) government or defendant responsibility for delay (3) defendant assertion of STA right. and (4) prejudice to defendant.

Presumptive prejudice is clearly demonstrated in the instant matter. The government a long with attorney Sharkey has engaged in pervasive misconduct which is ongoing and continuous which was done in bad faith in a clear attempt to circumvent Liounis's due process rights in violation of the FOURTH, FIFTH, SIXTH, EIGHTH, and FOURTEENTH amendments to the US constitution.

The speedy trial act mandates trial begin within 70 days.

Pursuant to 18 USC ss 3162(a)(2) a defendant not brought to trial in 70 days is entitled to dismissal and if the reason for delay is egregious misconduct by the government it must be dismissal with prejudice.  Under the Federal Rules Of Criminal Procedure rule 48(b) the court has authority to dismiss and release the defendant if unnecessary delay occurs in presenting a charge to the grand jury and bringing a defendant to trial. It is within the sound discretion of the district court whether to dismiss an indictment pursuant to this rule. United States v. Nunez, 2006 U.S. Dist. LEXIS 48652 at *9 ( W.D.N.Y. July 17,2006). Moreover F.R.Crim.P. Rule 48 not only implements Sixth amendment speedy trial rights of a defendant but provides a remedy for due process violations and non- constitutional violations as well. Mann v. United States . 304 F.2d 394, 398 (D.C. cir. 1962): United States v. Mark II Elecs., 283 F. Supp 280, 283 ( E.D. La. 1968). Furthermore, rule 48 and the speedy trial rights are not coextensive as rule 48 requires a more stringent standard be adhered to by the government. United States v. De Leo, 422 F.2d 487, 495 (1st cir. Mass. 1970).

Pre trial Proceedings are considered the CRITICAL STAGE. The right to counsel includes a correlative right to representation that is free from conflicts of interest. Wood v. Geogia, 450 U.S. 261, 271, 67 L. Ed. 2d 220, 101 S. Ct. (1980) ; also see Cuyler v. Sullivan, 446 U.S. 335, 345, 64 L. Ed. 2d 33, 100 S. Ct. 1708 (1980). Conflict of interest occurs when the interest of a defendant and his attorney diverge with respect to material factual or legal issue or to the course of action. United States v. Schwarz, 283 F.3d 76, 91 (2d cir. 2002). To violate the Sixth amendment , such conflicts must adversely affect the attorney's performance. See United States v. Levy, 25 F. 3d 146, 152 (2d cir.1994). To violate The Sixth amendment such conflicts { 372 F.3d 103 } must result in prejudice to the defendant. Levy, 25 F.3d at 152.

TRULINCS 48332054 - LIOUNIS, PETER - Unit: BRO-I-C

---------------------------------------------------------------------------------

FROM: 48332054
TO:
SUBJECT: RULE 33 PART 2-C
DATE: 07/16/2014 08:28:52 PM

4) After the defendant was forced to proceed pro-se throughout pre trial, the defendants family raised some funds through donations to hire a trial attorney to represent the indigent defendant. Attorney Ying Stafford was retained for the trial. A week later the defendant was produced in court and asked Judge Glasser for a 30 day continuance in order for Ying Stafford to prepare for trial. The court denied the 30 day continuance and stated " I'm not denying your counsel of choice I'm denying a 30 day continuance. Your trial counsel could still take the case with 3 days to prepare". The court continued to State " If you proceed pro-se you will get NO LEEWAY from the court and there will be no opening statements made to the jury by the defendant or the government. therefore the defendant will only be able to introduce his evidence if he follows the strict rules of evidence admissibility". The court continued " Trial is starting on Monday if you would like i will appoint standby counsel Michael Gold to represent you". Mr. gold stated " Your Honor I'm not comfortable taking this case with 3 days to prepare for trial because as standby counsel i never looked at the case or any discovery". The court stated " even with 3 days to prepare you will do a much better job than the defendant". Liounis under stress and duress chose the option to proceed to trial with standby counsel Michael Gold. The defendant has a Sixth amendment right to conflict free representation/ effective assistance of counsel and counsel of choice. The defendants Sixth amendment rights were violated. Moreover The defendant was denied conflict free counsel to assist him with filing this timely motion which asks the court for a new trial based on ineffective counsel and other legal issues. The request for conflict free counsel was made after trial and before direct appeal during the CRITICAL STAGE of the criminal proceedings and the defendant was denied. Before Mr. Gold filed the rule 29 on March 4, 2014 the defendant sent Mr. Gold an email explaining that Mr. Gold intentionally sabotaged the defendants trial and explained how he did so. Both Mr. Gold and the defendant were produced in court but your Honor refused to replace Mr. Gold despite a conflict of interest. After the Rule 29 was filed our relationship grew worse because of the said conflict of interest. We were again produced in court and this time Your Honor relieved Mr. Gold but refused to appoint conflict free counsel. Liounis is AGAIN forced to proceed Pro-se. Liounis has no help filing this motion for a new trial, the PSR objections and the sentencing memorandum. See people v. Brown , Colo. No. 11SC441, 4/7/14 Sixth amendment right to counsel of choice against the cost of allowing a continuance for defendant to seek new counsel. The court listed 10 specific factors. Also See Kansas Supreme court ruled April 11, (State v. Sharkey, 2014 BL 101754, kan; No. 106, 150 ( 4/11/14) The court stated a timely motion for a new trial is a critical stage of the criminal proceedings at which a defendant has a sixth amendment right to conflict free counsel.

With 3 days to prepare for trial Attorney Michael Gold was ineffective assistance of counsel. Mr. Gold did not OBJECT or file any motions to suppress the following unconstitutionally obtained / unauthenticated evidence which was introduced at the Liounis trial. All The said evidence falls under the fruit of the poisoness tree doctrine :
1) Involuntary, coerced, fabricated statement not signed, not sworn and no video. Moreover the statement was obtained after an illegal arrest with no valid arrest warrant on 4/17/12. Defendant produced in court for arraignment 20 hours after illegal arrest. Which far exceeds the 6 hours limit requiring suppression of said statement.
2) Unlawful Mark Anderson cell phone recordings were recorded using THE VOICE BOX SYSTEM. The said recordings are not title III, are not authenticated, are not the Liounis voice, no legal attorney general order and the said recordings have been rerecorded and amplified.
3) MDC recorded phone calls obtained while Liounis has been unconstitutionally detained with no valid indictment brought by a grand jury.
4) A car loan application that was ripped up and tapes together.
5) Mike Slali United States postal packages that were searched and seized using a false and reckless affidavit which stated "the recipient of the packages Mike Slali is a Fictitious person and the sender of the packages is a fictitious person. This is not true Mike Slali is a real person who lives with Liounis almost 2 years. The said packages did not have Liounis's finger prints on any of them. Moreover prior to submitting the false and reckless affidavit in support of seizing the said packages, agents took surveillance pictures of Mike Slali in front of the Liounis/Slali residence and in front of the U.S.P. trucks making the said package deliveries.
6) Garbage allegedly found in the garbage cans located on the side of the Liounis residence. The garbage cans are shared with all the residence including the landlord and her son who has a prior record for a Ponzi scheme. The said garbage did not have Liounis's finger prints or Liounis handwriting.
7)The Ed Moldren  phone calls which were recorded in California where it is illegal to tape a phone call without permission from all parties involved.
8)  On 4/17/12 Liounis was illegally arrested without a valid arrest warrant, agents searched the truck Liounis was driving and found about 8 casino players cards.
9) On 4/18/12 agents conducted an illegal search at the Liounis residence 59 Genesee avenue Staten island NY, the said search was related to the illegal arrest of Peter Liounis the prior day 4/17/12. Agents discovered the real Mike Slali, a throw away cell phone and some investor leads in Mike Slali's bedroom. All the evidence found including all people and any

TRULINCS 48332054 - LIOUNIS, PETER - Unit: BRO-I-C

-----------------------------------------------------------------------------------------------

statements falls under fruit of the poisoness tree doctrine.
10) Liounis cell phone 917-370-6944 was in the Liounis name and not linked to any crimes charged or any crimes at all. The said cell phone had no nexus to any victims or co conspirators NOTHING. However the government introduced title III recordings into the trial.

SEVEN days into trial and Mr. Gold Didn't make any contact with the defendants alibi witnesses or the defendants private investigator who interviewed the alibi witnesses. Mr. gold did not scratch juror # 5 who was Chinese and didn't speak English or juror #6 who lied to the court about having two sons who work for the New York police department after your Honor asked juror #6 if she had any family members in law enforcement. Judge Glasser did attempt to bring back the jury pool but they were dismissed. Gold Didn't object to over 100 exhibits, testimony from witnesses, cell site expert testimony and unlawful fabricated charts related to cell site expert, agent Delesio factually matching the Liounis voice with the Mark Anderson voice as an expert, agent Delesio recklessly stating he forgot to write down a confession. Mr. gold did not object one time during government summation and government rebuttal summation, the government during summation outright lying about a cell phone connected to the Mike Slali packages was found on Liounis when it was found during a search the day after Liounis arrest in Mike Slali's room, government vouching for agent Delesio's credibility concerning confession that he forgot to write down which didn't exist, during jury charge Judge Glasser stated even though there no voice analysis or finger print evidence you could still find the defendant GUILTY, Judge Glasser also vouched that the tape recordings obtained by the government were legally obtained and recorded when the defendant didn't know he was being recorded. Therefore the tapes are good evidence and you could still find the defendant guilty, Judge Glasser vouched for the cell site charts witch are man made, not from the phone company and not credible or factual. Throughout the trial The prosecutor stated the words over " the man who calls himself Mark Anderson" with no objection. When defendant testified on his own behalf the prosecutor's were digging into his criminal record asking questions about the defendants series 7 brokerage license which he lost for not following the rules with no objection.

Michael Gold did not object to the following evidence and the following evidence was in violation of the Sixth Amendment confrontation clause. Neither Slali, Mishiev or Ruslan Rapoport were called as witnesses by the government.
 1) Government introduced literature and website information concerning a legal funding company owned by Dimitri Mishiev, pictures of Liounis and Dimitri having lunch and Liounis and Mishiev recorded phone conversations. all of which have nothing to do with the crimes charged or any crimes.
2) Government introduced Mike Slali packages , pictures of a homeless Mike Slali. Voice sample recordings of Mike Slali and interview recordings with Mike Slali and agents. Moreover the government vouched that the slali voice doesn't match the Mark Anderson voice without scientific testing.
3) During Delesio testimony the government introduced evidence related to the SEVERED fugitive co-defendant Ruslan Rapoport.

Michael Gold Refused to ask the defendant questions under oath about the landlords son Christopher Mertz who lived in the rear of the house, shared the same garbage cans when the agents claimed they found a note linked to the charged crimes, Mertz is friends with Mike Slali and MR. Mertz has a prior record for a Ponzi scheme. Moreover Myself and Scott Paccione have both heard loud voices in the vents which sounded like sales calls on many different occasions. The vents lead to the Christopher Mertz Apartment. Mr. Gold also refused to ask the defendant questions under oath concerning voice test results from some of the victims, which should of also been submitted into evidence because the said victims identify someone else as the fraudster NOT Peter Liounis.

Peter Liounis submitted an alibi witness list to the court with the names Scott Paccione and Shantay Monroe both listed as witnesses. Liounis asked the Government to hand over all 3500 material and all notes concerning both my witnesses. Instead of turning over the exculpatory 3500 material and notes, The Government committed obstruction of justice. Seven days into trial Mr. Gold refused to call my alibi witness Scott Paccione and Shantay Monroe despite the defendant sending constant emails to Mr. Gold during trial begging him to call them . The night before Mr. Paccione was scheduled to testify for the defense agents went to Mr. Paccione's home and told him that the defendant blamed him for the crimes and that Mr.Paccione needs a lawyer. Moreover if Mr. Paccione testify's for the defendant he will be charged with obstruction of justice. Mr. Paccione and his wife were scared after being threatened. I understand that the government has the right to interview witnesses. However after the said interview " obstruction of justice" both my alibi witnesses needed lawyers. The government interviewed both witnesses many times prior to the obstruction of justice incident and during every interview both witnesses made it clear that Peter Liounis was INNOCENT. See Exhibit 3500-SP-1 12cr-350 (ILG) the new 3500 material which is the result of the agents committing obstruction of justice. NONE of the prior BRADY exculpatory 3500 material concerning both alibi witnesses which stated that the defendant was innocent of all crimes charged was ever handed over. On the new 3500 material clearly Mrs. Monroe is scared as she states " IM NOT CHOOSING HIM OVER YOU " right before Mrs. Monroe recklessly identify's the Liounis voice as the Mark Anderson voice, Scott Paccione also identify's the Liounis voice as the Mark Anderson voice but states he's not 100 percent sure. The next day instead of MR. Gold calling both my alibi witnesses to testify he tells me there both now government witnesses and the government is calling them both today to testify. The government never called them to testify

TRULINCS 48332054 - LIOUNIS, PETER - Unit: BRO-I-C

--------------------------------------------------------------------------------

and the new damaging 3500 material was never introduced at trial as evidence. However the COURT and the PROSECUTOR sent the new illegal 3500 material, tapes and transcripts into the jury deliberating room without the jury requesting the said evidence. This is obstruction of justice, egregious misconduct and a violation of my due process rights. The jury voted guilty on all counts immediately after the illegal evidence was sent back back into the jury deliberating room. Liounis was denied Due Process of Law and a fair trial.  SEE NEWLY DISCOVERED RECORDED MDC PHONE CALL BETWEEN SCOTT PACCIONE AND PETER LIOUNIS ON 2/14/14, UNIT I-63, 7:20 pm, PACCIONE CELL PHONE.

TRULINCS 48332054 - LIOUNIS, PETER - Unit: BRO-I-C

------------------------------------------------------------------------------

FROM: 48332054
TO:
SUBJECT: RULE 33 PART 2-D
DATE: 07/14/2014 12:36:46 PM

Prior to trial Peter Liounis and Michael Prepared for an actual innocence defense. Because the Court denied funding for expert witnesses the defendant was left no choice but to testify on his behalf exposing his prior criminal history. When the defendant testified under oath Mr. gold asked him point blank if the defendant participated in any of the charged crimes in any way shape or form. The defendant replied NO to ALL the questions. Mr. gold did not ask the defendant questions about victim voice test results which identify someone else as the fraudster NOT the defendant or introduce the said results as an exhibit. Mr. Gold also refused to ask the defendant questions about The landlords son Christopher Mertz. Mr. Mertz Shared the garbage cans located on the side of the residence where the agents found a note allegedly related to the charges, He knows Mike Slali, He has a prior criminal record for a Ponzi Scheme and Peter Liounis a long with Scott Paccione who both live above Mr. Mertz have both heard what appears to be sales calls through the vents which lead to the Mr. Mertz apartment. Agent Purvanol testified that the garbage confiscated had cat litter and cat poop all over it, Mr. Mertz has 2 cats. When the prosecutors questioned the defendant they really dig deep into the defendants criminal record including questions about a series 7 brokers license the defendant had and lost. Mr. Gold did not object at all he allowed the prosecutors to ask any question they desired.

During Summation Mr. Gold did the unthinkable He told the jury that the defendant was guilty 7 times but tried to minimize the defendants culpability. Moreover Mr. Gold stated the defendant is mark Anderson and Mark Anderson is in fact the defendant over and over. Mr. Gold made these false reckless admissions right after the defendant testified under oath that he is NOT Mark Anderson and had nothing to do with any of the charged crimes. The defendant became enraged he couldn't believe his ears. The defendant was held in contempt of court because of his attorney's actions. For two years the defendant filed countless motions in the district court claiming his innocence, the defendant also testified under oath during a pre trial hearing that he's innocent. HOWEVER MR. GOLD COMPLETELY TAKES AWAY THE PRESUMPTION OF INNOCENCE. Mr. Gold decides to state the defendant is guilty but was only an accomplice, a code caller, someone who played a very minimal part reading the same script over and over, that the defendant was not an owner or principle, that the defendants name wasn't on the corporation or bank account, that no one entered the courtroom and testified that the defendant made any deals with anyone to conspire and steal the victims money, that the defendant only received 3400 dollars out of 4 million stolen. Mr. Gold contradicted all the questions he asked and all the answers the defendant gave under oath. Moreover Mr. Gold forgot to submit a jury instruction to match his admissions. The Jury ONLY had 2 choices 1) Guilty beyond a reasonable Doubt which punishes the defendant as a principle or owner 2) Aiding and Abetting which also punishes the defendant as an owner or principle. The only choice on the jury verdict sheet was Guilty beyond a reasonable doubt. The defendant NOW faces 25-30 years in prison which includes massive enhancements. See PSR report pages 17 and 18 : defendants base offense level  7 levels, Loss amount 20 levels, amount of victims 6 levels, sophisticated means 2 levels, obstruction of justice 2 levels, TOTAL OFFENSE LEVEL 37. Also see  ( MO., 412 S.W. 3d 886, 2013 BL 313155) counsel was ineffective for failing to request a jury instruction on a lesser offense. Moreover case law indicates that the failure to provide the jury with the option of a lesser included offense deprives the defendant of a fair trial, even if the jury ultimately convicts the defendant of the greater offense. Here, the jury was only left with 2 choices both choices lead the defendant to slaughter. On March 4, 2014 Mr. Gold submitted a rule 29 on behalf of the defendant. At the very end Mr. Gold states " Accordingly, we ask the court to set aside and enter a verdict of not guilty as to all counts. There was not enough proof from which a reasonable juror could have concluded that the defendant was guilty beyond a reasonable doubt and theses counts must be dismissed". The Defendant agrees with Mr. Gold there wasn't enough proof from which a reasonable juror could have concluded that the defendant was guilty beyond a reasonable doubt. However who needs proof of GUILT when your own attorney tells the jury you are in fact GUILTY 7 times and the only option on the jury verdict sheet is GUILTY BEYOND A REASONABLE DOUBT. See Rebuttal Summation by AUSA Yeager page 862 the first words out of his mouth " Gold's argument comes down to this , DID PETER LIOUNIS KNOW HE WAS LYING WHEN HE PRETENDED TO BE MARK ANDERSON. AUSA Yeager continues to use Attorney Michael Gold's admission that Liounis is Mark Anderson to bury Liounis throughout the rebuttal summation.

UNITED STATES SUPREME COURT RULES ON ROSEMOND v. UNITED STATES NO. 12-895 DECIDED MARCH 5, 2014 ( NEWLY DISCOVERED EVIDENCE)

Judge Glasser instructed the jury that MR. Liounis could be found guilty under aiding and abetting as a principle or beyond a reasonable doubt as a principle. Michael Gold Emphasized that Liounis was mark Anderson and attempted to minimize The defendants culpability. Mr. gold explained in detail during his summation why the defendants culpability was so low and emphasized that there was no witnesses who testified that Mr. Liounis made any kind of agreement to conspire to steal any money from anyone or commit any crimes at all. The defendant was convicted. However its not clear if the jury came back guilty under beyond a reasonable doubt or Aiding and Abetting because the jury verdict sheet only had one choice Beyond a reasonable doubt guilty or not guilty. The Rosemond case changed the Aiding and Abetting jury instruction. Now under aiding

TRULINCS 48332054 - LIOUNIS, PETER - Unit: BRO-I-C

--------------------------------------------------------------------------------

and Abetting the judge must direct the jury to determine when the accomplice obtained the requisite knowledge of the said crime to decide whether the accomplice knew about the crime in sufficient time to withdraw from the crime. What the new jury instruction should convey, is that the defendant has chosen, with full knowledge, to participate in the illegal scheme. This requisite foreknowledge must be additionally proven besides intent. The jury at the Liounis trial was given the erroneous Aiding and abetting instruction. Moreover erroneous Aiding and Abetting jury instruction that was used at the Liounis trial affected all the convicted counts making the error structural. Structural error cannot be viewed under harmless error.

HIGHLY PREJUDICIAL COURT CHARGE/ABUSE OF DISCRETION BY THE COURT/MISCONDUCT BY THE COURT/ PROSECUTORIAL MISCONDUCT/ MR. GOLD SHOULD HAVE ASKED FOR A MISTRIAL.

Judge Glasser states Page 887 charge of court "During the course of the trial, you have heard reference in the arguments of defense counsel to the fact that certain investigative techniques such as handwriting, voice analysis, fingerprints, were not used by the government. There is no legal requirement that the government prove its case through any particular means of investigation. The government is not on trial. It is the governments responsibility to present the evidence it believes is sufficient to satisfy the burden of proof that it must bear in a criminal case in whatever way the government thinks appropriate to present that evidence. YOU HAVE HEARD EVIDENCE IN THE FORM OF TAPED RECORDINGS OF CONVERSATIONS WHICH WERE OBTAINED WITHOUT THE KNOWLEDGE OF THE DEFENDANT WHOSE RECORDINGS WERE LAWFULLY OBTAINED. IT IS TAPE RECORDINGS OF INTERCEPTED CONVERSATIONS THAT WERE ALL OBTAINED BY COURT ORDER. AN APPLICATION IS MADE TO THE COURT FOR PERMISSION TO INTERCEPT THOSE CONVERSATIONS AND THE COURT MUST BE SATISFIED BECAUSE IT WOULD GIVE THEM THE BASIS FOR GRANTING THAT OBLIGATION. THE GOVERNMENT THEREFORE HAS THE RIGHT TO USE THOSE CONVERSATIONS. Now an issue in the case is the identification of this defendant as the person charged with the crimes he is accused of. He denies that he is. He denies that the voice heard on the recordings, in evidence, on which the speaker purports to be Mark Anderson, is his. You have heard special agent Purvanol asked on cross examination whether the government had voice experts analyze those voice recording and she says that the government did not. I instruct you as a matter of law that witness do not have to be voice analysis experts to BE ABLE TO IDENTIFY THE DEFENDANTS VOICE ON THE RECORDINGS. You have heard testimony from agent Delesio and others who have listened to the recordings, who were not party to the conversation BUT WHO IDENTIFIED THE VOICE OF THE SPEAKER. Perfectly proper to do that. I would simply ask that the voice of the speaker could be identified by circumstantial evidence, by all the surrounding facts and circumstances just as effectively as it can be by direct proof.

Page 891, Line 25:

Judge Glasser States:
"Now, there were charts that which were received in evidence. A chart is prepared based upon evidence which has been received, but the evidence is voluminous and difficult to absorb in bulk and so charts are presented to summarize the evidence which had already been received in evidence. THERE WERE A NUMBER OF CHARTS WHICH HAVE BEEN PREPARED SUMMARIZING THE EVIDENCE WHICH HAD BEEN RECEIVED WITH RESPECT TO TELEPHONE CALLS, WITH RESPECT TO HOW MANY CALLS WERE MADE, WHAT PHONES THEY WERE CALLED FROM AND SO ON. THE CHARTS ARE CREDIBLE AND AS SIGNIFICANT AND ACCEPTABLE AS THE EVIDENCE UPON WHICH THOSE CHARTS HAVE BEEN BASED.

Page 915, line 22:

Judge Glasser states:
"Its sometimes happens that jurors would like to have portion of testimony read back. You have a perfect right to do that, but if you do make that request try and be as specific as you can about what you want to have read back. if it relates to specific facts or specific event that you are interested in getting some testimony read back, try and identify that.

Page 919, line 1:

Judge Glasser States:

"The rest of you, can retire to deliberate an dif you want to stay longer, if you want to deliberate for longer, you can send me a note and say you would like to stay longer. if not, I will give you a half hour/forty five minutes to get yourselves organized. YOU CAN TAKE THOSE IN.

Page 921,:

TRULINCS 48332054 - LIOUNIS, PETER - Unit: BRO-I-C
------------------------------------------------------------------------------------

"THE COURT: ALL THE TRANSCRIPTS WENT IN AS WELL.
MR. GOLD: IM SORRY
THE COURT: I SAID THE TRANSCRIPTS ARE BACK THERE AS WELL IN ADDITION TO THE TAPES.
MR. GOLD :IM SORRY
MR. LERER: THE TRANSCRIPTS
THE COURT: THE TRANSCRIPTS WERE TAKEN IN
MR. GOLD: OK
THE COURT: NOT A PROBLEM, I HAVE READ THROUGH THE SCOTT TRANSCRIPT AND I DON'T SEE ANY BASIS FOR
\T, IM SUSTAINING THE OBJECTION

After Your Honor gave strict directions to the jury to send a note if they need to see any of the over 100 exhibits or if they need
any read backs from the over 900 pages of transcripts. The COURT and the PROSECUTOR committed egregious misconduct
sending damaging evidence that was not even introduced into evidence at trial into the deliberating room. The Jurors did NOT
send any note asking for any transcripts, any tapes or any 3500 material especially 3500 material that was not introduced as
evidence in the trial.  Although Michael Gold objected and the objection was sustained, it didn't matter the damage was done.
The Jurors immediately returned a guilty verdict after reviewing the unlawful evidence that was sent into the deliberating room
without the Jurors requesting the said evidence.  See exhibit 3500-SP-1 12CR-350(ILG) Scott Paccione and Shantay Monroe
3500 Material both identifying the voice of Mark Anderson as the same voice as Peter Liounis while under duress and stress by
agents who went to their homes threatening to arrest them.  I am requesting that the court produce all 12 jurors for a hearing to
ascertain exactly what was sent in the deliberating room illegally and what effect it had on their subsequent decision to find the
defendant guilty of all 9 counts.

A defendant alleging ineffective assistance of counsel under Strickland Vs Washington, 466 U.S. 668 (1984), must show not
only that counsels performance was deficient but also the the deficient performance caused prejudice to the defense.  However
in U.S. Vs Cronic 466, U.S. 648 (1984), the U.S Supreme court declared that prejudice is presumed in situations where the
accused is denied counsel at a critical stage of trial of when counsel entirely fails to subject the prosecutions case to a
meaningful adversarial testing. The guiding principles on a motion for a new trial based on ineffective assistance of counsel are
well settled.

TRULINCS 48332054 - LIOUNIS, PETER - Unit: BRO-I-C

------------------------------------------------------------------------------------------------------------ 20 of 28

FROM: 48332054
TO:
SUBJECT: RULE 33 PART 2-E
DATE: 07/16/2014 12:17:00 PM

" when a claim of ineffective counsel is first raised in the district court prior to the judgment of conviction, the district court may, and at times should consider the claim at that point in the proceeding . United States v. Brown 623 F.3d 104,113(2d cir. 2010). Moreover Rule 33(a) recognizes the traditional principle that the trial court has broad powers to grant a new trial if for any reason it concludes that the trial has resulted in a miscarriage of justice. Wright, King & Klein, Federal practice and procedure, Criminal 3d 551. The burdens on the defendant in a Rule 29 motion or motion for new trial for newly discovered evidence are far higher and more onerous than the burden the defendant bears in a motion for new trial " in the interest of justice" under section (a) of Rule 33.

THE DEFENDANT WAS DENIED EXPERTS WITNESSES AND PARALEGAL SERVICES AND ADDITIONAL FUNDING FOR A PRIVATE INVESTIGATOR SERVICES. THE DEFENDANT WAS FORCED TO TESTIFY IN COMPLETE VIOLATION OF HIS FIFTH AMENDMENT CONSTITUTIONAL RIGHT AGAINST SELF INCRIMINATION AND HIS RIGHT TO REMAIN SILENT AND AS A RESULT HIS CRIMINAL RECORD WAS EXPOSED. LIOUNIS WAS DENIED THE FAIR OPPORTUNITY TO DEFEND THE CASE.

5) ALL the following documents could be found on criminal Docket 1:12-cr-350 (ILG). SEE document 112 filed on 9/26/13 the defendant requested funding for a private investigator, paralegal, cell site expert and audio forensic expert. All requests relate to the defendants defense at trial.

See Judge Glasser's Order dated October 8, 2013. Judge Glasse emphasizes the amount of money already spent on the defendants case and denies all funding requests. Alarmingly the order stated Attorney Kelley Sharkey was paid over 40,000 dollars for her representation of the defendant for a 10 month period. MRS. Sharkey did absolutely nothing for the defendant during the 10 month period. The 40,000 dollars paid to Sharkey affected the defendants budgets to defend his case. Judge Glasser also directed the defendant to provide an ex parte affidavit under oath and under penalty of perjury stating that he was not a party of any of those conversations.

See Document 138 and 138-1, both filed on 10/30/13. Both of these document were filed in response to Judge Glasser's Order dated October 8, 2013. the court states " the defendant under oath state's he is not the person on the phone committing the crimes and his Sixth amendment due process right is contingent on his ability to secure this audio forensic expert". The court AGAIN denied funding. The Defendant submitted a CV for audio expert Ed Primeau which stated his billing rates a long with his expert qualifications and requested a 10,000 dollars budget for his expert services. The services included every voice test available to man and to testify to the scientific factual results of the said voice identification tests.

The defendant also requested a budget of $10,000 for a cell site and GPS expert and explained thoroughly why this expert was needed and further explained that if he was denied the expert I am now compelled to testify in complete violation of my fifth amendment constitutional right against self-incrimination and my right to remain silent. Moreover my prejudicial criminal record would be exposed. I have also filed a CV for GPS and cell site expert Manfred Shrenk.

I also requested additional funds for my private investigator who completely stopped working five months prior to trial. I was unable to even send out one subpoena for trial. I also requested funding for a paralegal and was denied therefore for 24 months locked in a building I was unable to defend myself adequately.

See Judge Glasser's order dated November 6th, 2013. Judge Glasser again denies the funding for the audio forensic expert, however Judge Glasser approves a $4000 budget for the cell site expert, because the government decided to use evidence it believed would be relevant as to the location at which the calls were made. Judge Glasser continues by stating that the maximum amount for expert services has already been exceeded but these additional services are appropriately granted in the interests of a meaningful defense and a fair trial. Judge Glasser denied funds for the private investigator, paralegal and audio forensic expert.

See response to Judge Glassers memorandum and order dated December 18th, 2013. The last paragraph states that the defendants sixth amendment due process right is contingent on his ability to secure experts. The defendant was denied an audio forensic expert/paralegal and a private investigator. Moreover the budget given for the cell site expert was not enough to secure the expert. Lions later asked the court for additional funding for the cell site expert and was denied. as a result Liounis did not secure any expert witnesses, did not have a paralegal and didn't have a private investigator which were all imperative in the interests of a meaningful defense and a fair trial. See list of experts witnesses Peter Liounis will call at trial, in the last

TRULINCS 48332054 - LIOUNIS, PETER - Unit: BRO-I-C

----------------------------------------------------------------------------------------------------

Paragraph Liounis states: "I'm having trouble finding a cell site expert who will work on the $4000 budget".

On January 23, 2014 during a status conference Judge Glasser granted the governments motion to preclude the defendant from calling an expert on GPS or cell site technology and denied the defendant the additional funding requested for the said expert. Moreover the defendant complied with the court order by filing a sworn affidavit under the penalty of perjury that his voice is not the same voice as Mark Anderson and was still refused the Audio Forensic Expert. The Court also denied funds for a private investigator and paralegal.

See Connecticut Supreme Court (State v. Wang, Conn, No. SC 19178, 6/17/14). Public defender must fund defense costs incurred by indigents who self represent. "We conclude that an indigent self represented criminal defendant has a fourteenth amendment due process right to publicly funded expert or investigative services." The Court further states "An indigent cannot be compelled to accept public defender representation to access expert and investigative help. The right to self-representation and the right to expert assistance are not mutually exclusive, without access to the resources necessary to the integrity of a fair trial, the due process right of fundamental fairness is hollow for self-represented defendants". Also see Supreme Court of the United States Hinton v. Alabama, The attorney was ineffective assistance of counsel when he refused to ask the court for additional funding relating to expert witness. Liounis was refused an increased budget for he cell site expert and denied entirely for all other expert and investigative requests.

The defendant was forced to testify at trial and his criminal record was exposed. The defendant did not have an expert to combat the governments cell site expert who's testimony and charts were false and misleading regarding historical sell cite data. These are the same charts judge Glasser vouched for as being credible charts during the jury charge. It is not possible for anyone to reliably determine the particular coverage area of a cell tower or cell tower antenna AFTER THE FACT based solely on historical cell tower location data or historical call detail records. Moreover the defendant did not have a audio forensic expert to combat Agent Delesio's testimony factually identifying the Liounis voice as being the Mark Anderson Voice. Other agents testified it was there opinion but Delesio testified as an expert even describing distinctive voice patterns. Moreover the defendant was not prepared for Delesio's testimony regarding a CONFESSION THAT NEVER TOOK PLACE. Delesio testified that the defendant confessed but he forgot to write it down and continued to explain how exactly the defendant confessed using body language. See Delesio - cross - Gold Agent Delesio doesn't ask Peter Liounis any questions about the Grayson Hewitt Charges and doesn't ask Peter Liounis if he's Mark Anderson. Moreover the Prosecutor during summation and rebuttal summation kept vouching for Delesio's credibility regarding the confession that didn't exit. The defendant would of asked the court for a confession expert had the government alerted the court that Agent Delesio would testify as a confession expert. The Supreme Court has held that a prosecutor's vouching poses twin danger's : Such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the government and may induce the jury to trust the government's judgment rather than its own view of evidence. United States v. Young, 470 U.S. 1, 18-19 (1985)( citing Berger v. United States, 295 U.S. 78, 88-89 (1935). See page 690 of trial transcript Delesio- cross- Gold line 14: Yes i seen those notes shortly after they were created. Agent Delesio is referencing the created notes related to the fabricated statement. Also See Criminal reporter (Vol. 94,NO.14) page 426 reads CHIEF JUSTICE LABELS COURTS BUDGET SINGLE MOST IMPORTANT ISSUE IN 2014. The said budgets affected cases in 2013 as well, the government shutdown happened in 2013. Overall funding reduced $350 million in FY 2013. These cuts affected the Peter Liounis defense.

## ADDITIONAL ABUSE OF DISCRETION / BIAS

1) Denied effective assistance of counsel throughout pre trial proceedings . Forced to proceed Pro se.

2) Not suppressing all evidence related to illegal arrest with no valid arrest warrant. All said evidence should have been suppressed under the fruit of the poisoness tree doctrine.

3)The court refused to dismiss amended NULL and VOID indictment 1:12-cr-350-1 as it relates to Liounis. The grand jury did not bring n indictment as it relates to Liounis. Liounis was held and punished and tried with a NULL and VOID indictment for 27 months.

4) The Court refused to view the grand jury transcripts in camera or turn them over to the defense despite factual allegations related to misconduct in the Grand jury proceedings.

5) The Court allowed the government to AGAIN unlawfully amend the NULL and VOID indictment 1:12-cr-350-1 16 Months later. A changed indictment without resubmission to the grand jury used in a trial is VOID. See EX PARTE BAIN.

-------------------------------------------------------------------------------------------

6) Denied defendant Expert witnesses, Private investigator, paralegal for trial.

7) Indigent defendant denied counsel of choice for trial after family retains Attorney Ying Stafford to represent the defendant with donated funds. The court denied a 30 continuance knowing the retained attorney will not proceed to represent the defendant with less than a week to prepare for trial.

8) The court threatened the defendant if he proceeds pro se at trial he will receive no leeway from the court and there will be no opening statements made by the government or the defense. Therefore it will be difficult for the defendant to enter his evidence and exhibits because of the strict admissibility rules of evidence.

9) The court appointed standby counsel Michael Gold to represent the defendant. Mr. gold stated he was uncomfortable representing the defendant at trial with only 3 days to prepare, because as standby counsel he never looked at any discovery. your Honor replied " Even with 3 days to prepare you will do a better job than the defendant.

10) During jury charge Your Honor vouched for unreliable and unconstitutionally obtained evidence as being credible evidence, and emphasized that the jury could find the defendant guilty even though the government didn't use voice analysis, fingerprint and handwriting evidence. Also made a comment about the defendant being recorded without his knowledge. The court is telling the jury that Liounis posing as Mark Anderson was recorded without his knowledge.

11) Your Honor explained to the jury how to use notes to request read backs from over 900 transcripts and how to request exhibits while deliberating. Soon after Your Honor instructed the jury to take illegal items into the deliberating room. The items included transcripts, tapes and 3500 material See 3500-SP-1 12CR-350 (IGL) The said illegal evidence was sent into the jury deliberating room knowingly willfully with malice. The jury found the defendant guilty immediately on all counts after sending in the said evidence. Mr. Gold objected but should of asked for a mistrial. The said evidence was not introduced in trial.

12) The defendant asked the court to provide the Vasquez complaint filed in the southern district on 2/24/12, complaint 12-mj-00381. A long with transcripts of proceedings held on 2/24/12 " initial appearance".

TRULINCS  48332054 - LIOUNIS, PETER - Unit: BRO-I-C

-----------------------------------------------------------------------------------------------

FROM: 48332054
TO:
SUBJECT: RULE 33 PART 2-F
DATE: 07/16/2014 12:31:42 PM

13) the court has not turned over the arrest warrant and affidavit in support of arrest warrant signed by Magistrate Marylin Go on 4/16/12 which was used for the illegal arrest of Peter Liounis on 4/17/12. Despite a court Order from Magistrate Marylin GO to turn over the said documents.

14) The court made rulings which prejudiced the defendant for 27 months without jurisdiction. The defendant was denied bail knowing the indictment was NULL and VOID as it relates to Peter Liounis.

15) The court originally Ordered the Kelley Sharkey motions stricken after Liounis was given a choice by the court if he wants the said motions stricken or terminated and Liounis chose stricken. However after Liounis asked the Court for disbarment of Mrs. Sharkey from practicing law because she vindictively filed the defendants trial defense strategy notes publically and lied to the court in her declaration about the incident. The court took no action and Mysteriously terminated the said motions.

16) Peter Liounis was arrested between 2-3 pm on 4/17/12. The court refused to dismiss all open criminal complaints as it relates to Peter Liounis in violation of 18 U.S.C. ss 3161(b) requiring dismissal pursuant to 18 U.S.C. ss 3162(a)(1) as applied to the speedy trial act and the 30 day timeframe to indict incident to arrest. Moreover the alleged arraignment held on 5/25/12 was beyond the permissible timeframe in violation of 18 U.S.C. ss 3161(b) requiring dismissal pursuant to 18 U.S.C. ss 3162(a) (1).

17) The court denied Peter Liounis his constitutional right to a speedy trial knowing the indictment was Null and Void as it relates to Liounis.

18) The court allowed witnesses and unconstitutionally obtained evidence to be introduced in trial which have no nexus to the Grayson Hewitt Charges or Peter Liounis.

19) The court refused to provide all complaints and dispositions filed against all the agents who testified at the Liounis trial. The said complaints were asked in good faith only for impeachment purposes.

20) The court allowed MDC recorded phone calls of Peter Liounis into the trial. The said phone recordings were obtained while Liounis was illegally incarcerated without jurisdiction.

21) The court allowed illegal recorded phone calls from Mr. Ed Moldren who lives in California. In the state of California you cannot record any phone calls without all parties consenting.

22) The court allowed the Peter Liounis cell phone recordings 917-370-6944 into the trial. The said cell phone is in the name of Peter Liounis and the said phone recordings have no nexus to the Grayson Hewitt scheme or any crimes at all.

23) The Court held Peter Liounis in contempt of court which caused the defendant massive prejudice in front of the jury. Peter Liounis did NOT deserve contempt of court, yes Liounis was upset but Liounis wasn't violent and cursing in fact Liounis behaved pretty good considering his Attorney Michael Gold told the jury he was guilty 7 times during summation right after Peter Liounis testified under oath that he was NOT GUILTY and NOT MARK ANDERSON. Moreover the court didn't even ask Liounis why he was upset. Moreover if Liounis was not held in contempt of Court Liounis could of stopped the prosecutor and the Court from sending evidence into the jury deliberating room illegally.

24) Juror # 5 should of been scratched  she was a Chinese woman who didn't speak English.

25) Juror # 6 should of been scratched. Your Honor asked the juror under oath if she had any family members who worked in law enforcement ?  Juror #6 replied NO. Later Juror # 6 alerts the court that she has 2 sons in the New York police Department. Your Honor attempted to have the jury Poole brought back into the courtroom but they had already been dismissed.

26) This case relied heavily on voice identification. Peter Liounis complied with a court Order by submitting an affidavit under the penalty of perjury that his voice is not the same voice as the confirmed fraudster. The court still denied funding for an Audio Forensic Expert. Peter Liounis also submitted a letter to the Court volunteering to take any of the following voice tests A) Voice analysis B) Voice print analysis C) Voice recognition. The government has used the same tests to convict others. The Court should of Ordered the government to conduct all the said Voluntary voice tests on Peter Liounis. Moreover the court should of

---------------------------------------------------------------------------------------------------

held a Daubert hearing. The government was vehemently against all scientific voice testing which is an exact science, the court should of probed WHY ? Moreover the government DID conduct voice analysis testing as it relates to James Weston and Andrew Black but intentionally withheld the results of the confirmed voice match from the defense in violation of BRADY. The government claims the Liounis Voice is the same voice as James Weston, Andrew Black and Mark Anderson but again refuses to conduct scientific testing on the Liounis Voice or hand over exculpatory voice test results which proves otherwise.

27) The Court did not produce the following requested documents and items related to Aleksander Rapport and James McLaughlin : Waiver of indictment, information, information sheet, allocution transcripts, dispositions and any non prosecution agreements. Moreover the following transcripts of proceedings were also requested and never provided by the Court : A) Alexander Rapport Docket # 11-Cr-00301-JG entry numbers 17, 18 and proceedings held on 5/11/12. B) James McLaughlin Docket number 1:12-mj-00079-VVP-1 entry's 1 through 7.

28)The Court didn't hold a franks hearing. Peter Liounis was arrested illegally without a valid arrest warrant. The government concealed the illegal arrest warrant and affidavit in support of the arrest warrant signed by Magistrate Marylin Go on 4/16/12 as it relates to Liounis. The alleged conspiracy ended 2 months prior to the illegal arrest without a valid arrest warrant. The illegal arrest affected a huge amount of unconstitutionally obtained evidence that was introduced at trial. The said evidence should of been suppressed pursuant to the fruit of the poisoness tree doctrine. If the Affiant made statements which failed to take into account of the facts as he knew them, or he seriously doubted were true, that would show reckless disregard for the truth. United states v. Rivera 728 F. Supp. 250, 258 (SDNY). Franks v. Delaware, 438 U.S. 154 (1978). Clearly the affiants submitted perjured affidavits by stating Mike Slai was a fictitious person when the affiants had surveillance pictures of Mike Slali in front of the Liounis residence and in front of the United states postal truck when a package was being delivered prior to submitting the perjured affidavits. The said affidavits were false and reckless in everyway shape and form.

29) During the jury charge the Court emphasized how and why the jury could still find the defendant guilty, even though all the elements were not proven and not supported by trial evidence beyond a reasonable doubt. Not one person testified that Liounis was part of any conspiracy or that Liounis made any agreement to conspire to commit any crimes at all. In fact Agents testified that Peter Liounis who lived in Staten Island was tracked by GPS and his cell phone was tapped during the Grayson Hewitt scheme period and simultaneously the same agents GPS tracked and wire tapped the people who committed the Grayson Hewitt crime in Brooklyn. Agents testified As a result Peter Liounis had no contact with any individuals committing the Grayson Hewitt crime at all . Nothing not even an email or text message.

30) The Court allowed unconstitutionally obtained Mark Anderson wire tap evidence into the trial which was not related to Peter Liounis at all. The said wire taps were not Title III recordings, they were recorded using the Voice Box System, The recordings were not authenticated, the recordings were rerecorded and amplified, there was no valid attorney general order for the Grayson Hewitt recordings and the defendant submitted an affidavit under the penalty of perjury that the said Mark Anderson voice is not the same voice as Peter Liounis.

31) The Court denied the defense paralegal services, an increased budget for a Cell Site Expert and an increased budget for private investigator services.

FOR ALL THE REASONS STATED ABOVE EMPHASIS ADDED REASONS # 3, 5, 11, 14, 16 AND 23 PLEASE RECUSE YOURSELF FROM THE CASE PURSUANT TO 28 U.S. ss ss 455 AND 144.

TRULINCS 48332054 - LIOUNIS, PETER - Unit: BRO-I-C

----------------------------------------------------------------------------------------------

FROM: 48332054
TO:
SUBJECT: RULE 33 PART 3
DATE: 07/16/2014 12:33:23 PM

ARGUMENT

### GOVERNMENT MISCONDUCT AND INTENTIONAL BRADY VIOLATIONS

Brady v. Maryland, 373 U.S. 83, 104 (1963), requires the government to disclose evidence favorable to the defense as to guilt or punishment. To be favorable, evidence need not be determinative of guilt or innocence but must tend to exculpate the defendant. Giglio material is a subset of Brady material, and requires disclosure of evidence effecting the credibility of a witness who's reliability may be dispositive of guilt or innocence. (Giglio v. United States, 405 U.S. 150, 154 (1972), quoting, Napue v. Illinois, 350 U.S. 264, 269 (1959)). As stated by the court in United States v. Bagley, 473 U.S. 667 (1985), impeachment evidence as well as exculpatory evidence, falls within the Brady rule. (citing Giglio, 405 U.S. at 150; accord United States v. Leung, 40 F.3D 577, 582 (2d Cir. 1994)). This is self evident, since the juries estimate of truthfulness and reliability of a given witness may well be determinative of guilt or innocence" (United States v. Seijo, 514 f.2d 1357, 1364 (2d Cir. 1975), quoting, Napue, 360 U.S. at 269).

Moreover, as the court declared in United States v. Mitchell, 372 F.Supp. 1239 (SDNY 1973):

   We reject the blanket assertion that Brady imposes no pretrial obligation on the government.... We perceive the due process implications of Brady as obligating the government to disclose exculpatory information as soon as the character of such information is recognized. The view that Brady material must be disclosed upon demand is shared by the ABA Standards for Criminal justice, prosecution function and defense function, 3-3.22(a)(3d ad. 1993):

   A prosecutor should not intentionally fail to make timely disclosure to the defense at the earliest feasible opportunity, of the existence of all evidence or information which tends to negate the guilt of the accused or mitigate the offense charged or which would tend to reduce the punishment of the accused. (ABA Standards for Criminal Justice: Prosecution and Defense Function, 3d ed, 1993 American Bar Association). Moreover, the government may not hide a fatal flaw in an indictment, from the defendant or from the district court Judge, and act as if nothing is wrong, while taking the position that its disclosure is not legally required. The US Attorneys Manual states as a matter of policy that prosecutors should disclose among other things information that established a recognized affirmative defense. USAM 9-5 001(c)(1). A fortiori, the prosecutors should disclose information that dooms an indictment, and deprives the district court of jurisdiction over the defendant. I submit that Brady v. Maryland, 373 US 83(1963), and the fairness principle underlying it, require such disclosure to the defendant as a matter of constitutional right.

Nevertheless, in United States v. Prince, for instance, Judge Raggi had formally reprimanded the government for its continuing, systematic failure to provide timely disclosure of Brady/Giglio material. On the government motion for reconsideration, the court expressed concern regarding the governments "continued failure to understand or even acknowledge the due process concerns that prompted the court's sanction order." (United States v. Prince, Docket no. 93 Cr. 1073 (RR), 1994 WL 99231, at *1, 1994 (EDNY March 10, 1994); see also United States v. Vozzella, 124 F.3d 389 (2d Cir. 1997)(loan sharking conviction reversed for Brady violations). The foregoing analysis forecloses the argument that evidence which is discoverable under both Brady and the Jencks Act may be withheld until trial; the timing of discovery under the Jencks Act certainly does not trump the obligations imposed as a matter of due process under Brady. (See United States v. McVeigh, 923 F.Supp. 1310, 1315 (D.Colo. 1996)(duty to turn over exculpatory and impeachment information under Brady neither altered nor modified by fact that the information is contained in witness statements or Grand Jury testimony; thus, "such statements should now be provided").

### PROSECUTORIAL MISCONDUCT / THE GOVERNMENT COMMITTED MISCONDUCT BY INTENTIONALLY SUPPRESSING MATERIAL BRADY EVIDENCE THEY WERE REQUIRED TO DISCLOSE PRIOR TO TRIAL

   Pursuant to being charged in CR 12-350 Liounis filed numerous pre-trial motions including a demand that the government immediately disclose any and all evidence favorable to the defendant or material to either guilt or punishment pursuant to Brady v. Maryland. By motion response on 02/27/13 AUSA Spector maintained that the government was aware of its obligation to produce exculpatory information or material under Brady. Additionally, AUSA Spector stated that the government was not in possession of any exculpatory information and that if the government later came into possession of any exculpatory material the government will disclose it to the defendant as soon as the character of the information is recognized. The court, in ruling on this motion, accepted the governments good-faith assurances that it is not in possession of exculpatory material. Furthermore, the court reminded the government that such material should be disclosed shortly after its discovery. (See Mastracchio v. Vose,

TRULINCS 48332054 - LIOUNIS, PETER - Unit: BRO-I-C

--------------------------------------------------------------------------------------------------------

274 F.3d 590, 599 (1st Cir. R.I. 2001) (See United States v. Mahaffy, 2012 U.S. App. LEXIS 16072 (2d Cir. Aug. 2, 2012) (information is material as a matter of law if a defendants result would have been different if the information had been disclosed). Brady demands that any material information relative to the guilt or punishment of a defendant be disclosed. Moreover the government, and every member of the prosecution team, can be charged with constructive, if not actual knowledge, of the Amended Null and Void indictment 1:12-cr-350-1 as it relates to Peter Liounis at the time of the Liounis pre-trial motions for disclosure of Brady material. See Kyles v. Whitley, 514 U.S. 419, 437, (1995). See list of Government misconduct and Brady violations below:

1) The government Concealed Amended Null and Void Indictment 1:12-cr-350-1 as it relates to Peter Liounis. Moreover 16 months later the government AGAIN amended NULL and VOID indictment 1:12-cr-350-1 in an attempt to sanitize and further conceal the NULL and VOID indictment as it relates to Peter Liounis. The following documents were hand altered to further conceal the null and void indictment as it relates to Peter Liounis. Information sheet 12Cr-350, Calendar minutes ON GRAND JURY PRESENTMENT. Moreover, Alarmingly Liounis and Ruslan Rapoport appear on the caption of the presentment sheet to the grand jury as defendants prior to the true bill on 5/17/12. The government refused to turn over the grand jury transcripts and voting records knowing the said indictment is Null and Void.

2) The Government was well aware that an indictment was NOT BROUGHT by a grand jury as it relates to Peter Liounis.

3) The Government was well aware that any changes to the said indictment without resubmission to the grand jury result in a NULL and VOID indictment.

4) The Government Used Roman Tsimerman as the prosecutorial arm to commit fraud on the defense. Mr. Tsimerman was charged in the Grayson Hewitt scheme and joined with Liounis AGAIN in an attempt to sanitize and further conceal the Null and Void indictment 1:12-cr-350-1 as it relates to Peter Liounis.

5) Peter Liounis was illegally arrested on 4/17/12. Liounis was arrested with an illegal arrest warrant signed by Magistrate Marylin Go on 4/16/12. The government has concealed and refused to turn over the said documents for 2 years even after a court Order from Magistrate Marylin. The Vasquez complaint 12-mj-00381 filed 2/14/12 was used to effect the unlawful arrest in violation of Liounis's due process rights.

6) The government concealed Unconstitutionally obtained evidence which was introduced into the Liounis trial. Peter Liounis was arrested illegally on 4/17/12 all the evidence obtained on the date of arrest and the all the evidence found the very next day during an illegal search at the Liounis residence should of been suppressed pursuant to the fruit of the poisoness tree doctrine.

7) Peter Liounis was arrested on 4/17/12 between 2-3 pm. All open complaints should of been dismissed with prejudice as it relates to Peter Liounis. The said complaints are in violation of 18 U.S.C. ss 3161(b) and require dismissal pursuant to 18 U.S.C. 3162(a)(1) as it relates to the speedy trial act and the 30-day timeframe to indict incident to arrest. Moreover the alleged arraignment held on 5/25/12 was also in violation 18 U.S.C. ss 3161(b) requiring dismissal pursuant to 18 U.S.C. ss 3162(a)(1). The agent notes and 3500 material are hand altered changing the time of arrest from 2-3pm into 640pm. The government refused to hand over radio transmissions the day of arrest and the video footage of the exterior and interior of the El dorado headquarters where Liounis was taken after his illegal arrest.

8) Prior to trial and during trial the government refused to turn over 3500 material and agent notes concerning all interviews and items found during the search of the Liounis residence on 4/18/12. This includes the list stating where in the house the items were found. Agent Delesio lied under oath by stating a phone related to the crimes was found on Liounis the day of arrest. The prosecutor during summation also stated the said phone was found on the defendant the day of arrest. See government memorandum of law dated February 27, 2013 page 27 paragraph (8) AUSA Spector states " Liounis seeks specific details concerning a silver Samsung phone discovered during the April 18 2012 search. Liounis was arrested on the April 17, 2012. The said phone was found in Mike Slali's room not on Liounis.

9) The government refused to turn over all complaints filed and all dispositions concerning agents who testified at trial. the request was made in good faith and would only be used for impeachment purposes.

10) The government concealed the Ed Moldren tapes introduced at trial were illegally recorded. In the state of California all parties must agree prior to recording a phone conversations.

11) The government did not turn over exculpatory notes concerning a siren test done at the Liounis residence while the mark Anderson phone was in use and being wire tapped and did not turn over exculpatory notes concerning someone else placing a 5 minute phone call to activate a pre paid card using the Mark Anderson phone.

TRULINCS  48332054 - LIOUNIS, PETER - Unit: BRO-I-C

------------------------------------------------------------------------------------

12) Postal inspector Purvanol lied under oath stating there were no voice analysis done . See PRS stating the opposite. The government withheld exculpatory voice analysis results a long with exculpatory voice test results from victims who testified at trial who indentified someone else as the fraudster NOT Peter Liounis.

13) Seven days into trial the government refused to hand over exculpatory 3500 material concerning the Liounis alibi witnesses Scott Paccione and Shantay Monroe. The night before they were both going to testify for the defense agents went to there home and said i blamed them for the crimes and they both need lawyers and if they testify for the defense they will be charged with obstruction of justice. The next day the government handed the defense new 3500 material from the night before and stated the government is now calling my alibi witnesses as government witnesses. The government never called them to testify. The government did whatever it took not to hand over the exculpatory 3500 material and not to let them both testify for the defense. Alarmingly the government illegally sent tapes and transcripts and the very damaging new 3500 material obtained from Scott and Shantay into the deliberating room without the jurors asking for it. This was evidence not introduced at trial. The jury found Liounis guilty on all counts right after the egregious government misconduct.

This case is an outlier presenting the unique circumstance wherein intentional government misconduct and concealment has been shown and calls for dismissal with prejudice as it relates to Peter Liounis. Such patterns of government misconduct and disregard for Brady disclosure obligations Considered together, evidence a series of intentional acts that deprived Liounis to due process of law and a fair trial. (See United States v. Strode, 2000 U.S. App. LEXIS 15766 (9th Cir. Or. July 5, 2000)(Court held that acts of prosecutorial misconduct when considered "cumulatively" were not harmless and called into question the jury's guilty verdict). Clearly, the most outrageous and alarming misconduct was the governments attempt to intentionally conceal the Amended Null and Void indictment 1:12-cr-350-1 as it relates to Peter Liounis, without the defense discovering the jurisdictional defect and the Government and the Court sending illegal evidence into the jury deliberating room.

TRULINCS 48332054 - LIOUNIS, PETER - Unit: BRO-I-C

---------------------------------------------------------------------------------------

FROM: 48332054
TO:
SUBJECT: RULE 33 CONCLUSION
DATE: 07/17/2014 08:57:15 AM

CONCLUSION

WHEREFORE, based on all the reasons set forth above Peter Liounis pro-se Humbly requests this Honorable Court to dismiss all charges against Peter Liounis with prejudice, Dismiss Null and Void Amended Indictment 1:12-cr-350-1 with prejudice as the indictment fails to invoke the courts jurisdiction as it relates to Peter Liounis, trial on a changed indictment not resubmitted to the grand jury is VOID, Peter Liounis never waived his constitutional right to indictment BROUGHT by a grand jury,  a new trial pursuant to Rule 33 of the Federal Rules Of Criminal Procedure. Please grant the relief requested in its entirety ; or alternatively a hearing be granted on the motion. The motion for a new trial is based on ineffective assistance of counsel by trial counsel attorney Michael Gold and newly discovered evidence. Please appoint conflict free counsel to assist with this motion, the requested hearing, PSR objections, sentencing memorandum and to assist with filing a notice of appeal. The request for conflict free counsel is made timely prior to sentencing during the the critical stage of proceedings. The Defendant has a Sixth Amendment right to conflict free representation during the critical stage of proceedings. Peter Liounis was denied Due Process of Law and a Fair Trial.

Sworn to under the penalty of perjury pursuant of 28 USC 1746 on July 17, 2014

By: _Peter Liu_____
Peter Liounis Pro-se
Reg No. 48332-054
MDC Brooklyn
PO BOX 329002
Brooklyn, NY 11232

                        PROOF OF SERVICE

I hereby aver that i caused to be mailed the original to the clerk of the court and conformed copies to those parties set forth below after having first affixed sufficient first class postage, pre-paid and placing same under separate cover, and depositing same in the inmate prisoner legal mail box, at the above described institution, pursuant to the MAIL BOX RULE, on the date appearing infra, Clerk of the court, 225 Cadman Plaza EAST, Brooklyn, NY 11201, Honorable I Leo Glasser, USDCJ IN CHAMBERS, 225 Cadman Plaza EAST, Brooklyn, NY 11201, U.S. Attorney's Office, 271 Cadman Plaza EAST, Suite 2805, Brooklyn, NY 11201.

Dated this 17th day of July 2014

By: _Peter Liu_____
Peter Liounis Pro-se
Reg. No. 48332-054