MANDATE

14-3216-cr
United States v. Liounis

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of February, two thousand sixteen.

PRESENT:   RALPH K. WINTER,
           REENA RAGGI,
           CHRISTOPHER F. DRONEY,
                     *Circuit Judges.*
------------------------------------------------------------------
UNITED STATES OF AMERICA,
                     *Appellee*,


                    v.                                    No. 14-3216-cr

PETER LIOUNIS, AKA "Mark Anderson," AKA "Andrew Black," AKA "James Weston," AKA "Mike Solli," AKA "Mike Slolli," AKA "Mike Sloli,"
                     *Defendant-Appellant*,


RUSLAN RAPOPORT, AKA "Sam Freed," AKA "Alex James," AKA "Al Jason," AKA "Mark Berg,"
                     *Defendant*.[*]
------------------------------------------------------------------


FOR APPELLANT:              Robert J. Boyle, Law Office of Robert J. Boyle,
                            New York, New York.

--------------------------------

[*] The Clerk of Court is directed to amend the caption as set forth above.

MANDATE ISSUED ON 07/25/2016

FOR APPELLEE:                         Susan Corkery, Daniel A. Spector, Assistant
                                      United States Attorneys, *for* Robert L. Capers,
                                      United States Attorney for the Eastern District
                                      of New York, Brooklyn, New York.

Appeal from a judgment of the United States District Court for the Eastern District of New York (I. Leo Glasser, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on August 26, 2014, is AFFIRMED.

Defendant Peter Liounis stands convicted after a jury trial of nine counts of conspiratorial and substantive mail, wire, and securities fraud, <u>see</u> 15 U.S.C. §§ 78j(b), 78ff;[1] 18 U.S.C. §§ 1341, 1343, 1349, for which he received a low-end Guidelines sentence of 292 months' imprisonment.   On appeal, Liounis's counsel argues that (1) he was denied the right to counsel of his choice, (2) his post-arrest statements should have been suppressed, (3) the government's trial conduct violated his right to remain silent, (4) his trial counsel was constitutionally ineffective, and (5) his sentence is procedurally and substantively unreasonable.   Liounis raises additional arguments in a supplemental <u>pro se</u> brief.   We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1.   <u>Right to Counsel</u>

Liounis argues that he was denied his counsel of choice at both trial and at sentencing.   We disagree.

---

[1] It appears that the computer program used to enter the Judgment did not afford enough space for the second "f" in 15 U.S.C. § 78ff.   <u>See</u> D.A. 550.   The district court should correct this scrivener's error manually to avoid any confusion as to the crime of conviction.

a.    Adjournment of Trial

Four days before the scheduled start of trial, Liounis—who was then proceeding pro se (but with standby CJA counsel)—sought an adjournment to a date when recently retained, but unidentified, counsel could assume responsibility for his defense.   We identify no abuse of discretion in the experienced trial judge's denial of such an eve-of-trial adjournment given his (1) reasonable concern that the request was a delay tactic, see United States v. Pascarella, 84 F.3d 61, 68–69 (2d Cir. 1996); (2) proper consideration of hardship to eleven victim-witnesses traveling to New York for trial, see United States v. Brumer, 528 F.3d 157, 160 (2d Cir. 2008); and (3) appointment of standby counsel to represent Liounis fully at trial.[2]   When trial began, more than one year after Liounis began to proceed pro se, and almost two years after his arrest, he had already had sufficient time to secure retained counsel if he so desired.   See United States v. Scopo, 861 F.2d 339, 344 (2d Cir. 1988) (holding that denial of last-minute request for adjournment did not violate right to counsel where case had been pending for more than two years).   Further, the district court had already granted three adjournments: at Liounis's request in October 2013, at the parties' joint request in November 2013, and at the government's request in December 2013 (over Liounis's objection).

---

[2] Though counsel professed hesitancy about his ability to do a competent job "under these circumstances," D.A. 206, in light of Liounis's vacillation and the district court's suspicion that his request was a delay tactic, its refusal to grant the adjournment was not an abuse of discretion.   See also Morris v. Slappy, 461 U.S. 1, 13–14 (1983) (holding that Sixth Amendment right to counsel does not guarantee "meaningful relationship" with counsel).   Indeed, the trial judge would subsequently commend counsel's "vigorous defense" of Liounis at trial despite "overwhelming evidence of guilt."   G.A. 120.

Thus, we conclude that the denial of adjournment did not deny Liounis his right to counsel of his choice.

    b.    <u>Sentencing</u>

Liounis argues that he was also denied counsel at sentencing when the district court relieved his trial attorney (the second CJA attorney appointed for Liounis) without assigning new counsel.   Liounis contends that he never unequivocally expressed a desire to proceed <u>pro se</u> at sentencing and that the district court's inquiry into his competence to make such a decision was inadequate.   We review a district court's conclusion regarding the constitutionality of a defendant's waiver of the right to counsel <u>de novo</u>, <u>see</u> <u>United States v. Spencer</u>, 995 F.2d 10, 11 (2d Cir. 1993); <u>accord</u> <u>United States v. Nina</u>, 607 F. App'x 33, 36 (2d Cir. 2015), affirming if "any reasonable view of the evidence supports it," <u>United States v. Spencer</u>, 995 F.2d at 11 (internal quotation marks omitted), and mindful that whether a waiver is knowing and intelligent "depends upon the particular facts and circumstances of the case and characteristics of the defendant himself," <u>United States v. Fore</u>, 169 F.3d 104, 108 (2d Cir. 1999).

In this case, Liounis's actions must be viewed in the context of the choice presented to him by the district court when he expressed dissatisfaction with trial counsel. The district court reasonably, and clearly, advised Liounis that he did not have a right to pick his CJA attorney; his choice was between representation by trial counsel—who had performed "superbly," D.A. 319—or proceeding <u>pro se</u> and without standby counsel. <u>See</u> <u>United States v. Barton</u>, 712 F.3d 111, 118 (2d Cir. 2013) (stating that "voluntary and unequivocal" requirement "does not mean . . . a court may not, under certain

4

circumstances, require the defendant to select from a limited set of options a course of conduct regarding his representation," including forcing defendant "to choose between waiver and another course of action as long as the choice presented to him is not constitutionally offensive" (internal quotation marks omitted)); United States v. Culbertson, 670 F.3d 183, 193 (2d Cir. 2012) (holding that, where "court has already replaced counsel more than once," court may reasonably require intractable defendant "either to proceed with the current appointed lawyer, or to proceed pro se").   In this context, Liounis's non-responsive reiteration of his desire for a different court-appointed attorney, even if not accompanied by an express statement that he wished to proceed pro se, was reasonably construed by the district court as the latter election.   See, e.g., United States v. Alden, 527 F.3d 653, 661 (7th Cir. 2008); King v. Bobby, 433 F.3d 483, 492 (6th Cir. 2006); United States v. Kneeland, 148 F.3d 6, 12 (1st Cir. 1998); United States ex rel. Testamark v. Vincent, 496 F.2d 641, 643–44 (2d Cir. 1974).[3]

Further, because the district court had already conducted an extensive colloquy with Liounis to ensure that his pre-trial waiver of counsel was knowing and intelligent, see Faretta v. California, 422 U.S. 806 (1975), the district court did not need to repeat that detailed exchange in concluding that Liounis had knowingly and intelligently decided to forego court-appointed counsel at sentencing, particularly given Liounis's previous experience with the criminal justice system.   See, e.g., Wilson v. Walker, 204

---

[3]  The district court had also made it clear to Liounis several months earlier that he could not pick and choose which attorney represented him, explaining, "[I]f you do not wish to have [appointed counsel] continue to represent you, I will not appoint another lawyer," D.A. 310.   Liounis nevertheless agreed to continue with appointed counsel.

F.3d 33, 38 (2d Cir. 2000) (concluding that defendant showed "purposeful choice reflecting an unequivocal intent to forego the assistance of counsel," particularly in light of his "background and previous experiences in the criminal justice system" (internal quotation marks omitted)).

Thus, we reject Liounis's right-to-counsel challenge as meritless.

2.   Post-Arrest Statements

Notwithstanding his signature on a rights waiver form, Liounis asserts that his post-arrest statements should have been suppressed both because he invoked his right to remain silent, see Miranda v. Arizona, 384 U.S. 436, 444–45 (1966), and because, even if he did not, his confession was involuntary, see Schneckloth v. Bustamonte, 412 U.S. 218, 224 (1973).   Neither challenge has merit.

As to the first claim, Liounis faults the district court for rejecting his Miranda challenge without citing his supporting testimony.   The argument is defeated by the record wherein the district court credited DHS Special Agent Richard DeLisio's testimony about events leading to the waiver and rejected Liounis's testimony.   See United States v. Maldonado-Rivera, 922 F.2d 934, 972 (2d Cir. 1990) (recognizing credibility assessments at suppression hearing as province of district judge that appellate court will not overturn).   While Liounis contends that he would not have spoken with Agent DeLisio after initially refusing to do so, the district court was not compelled to so find.   See, e.g., United States v. Gonzalez, 764 F.3d 159, 166 (2d Cir. 2014) (upholding admission of statements where defendant first invoked right to silence but later advised agents that he wished to speak with them).

6

Liounis's claim that his physical condition rendered his confession involuntary also fails because the district court, again resolving credibility disputes, reasonably found that Liounis was suffering only from allergies when interrogated, which did not prevent him from knowingly and voluntarily responding to questions while agents retrieved his medications.   See United States v. Maldonado-Rivera, 922 F.2d at 972 (stating that such findings of fact must be upheld unless "clearly erroneous"); cf. United States v. Taylor, 745 F.3d 15, 27 (2d Cir. 2014) (holding statement involuntary where record compelled conclusion that defendant was in "stupor" when interrogated).

Nor can Liounis demonstrate error, much less plain error, in the district court's failure to reopen sua sponte his suppression hearing after DeLisio's trial testimony.   See United States v. Marcus, 560 U.S. 258, 262 (2010) (stating plain error standard); cf. In re Terrorist Bombings of U.S. Embassies in E. Afr., 552 F.3d 177, 196 (2d Cir. 2008) (applying abuse of discretion review to denial of request to reopen suppression hearing). While that testimony offered more detail about Liounis's initial reluctance to speak with authorities, it nowhere indicated "unambiguous" invocation of the right to remain silent. Berghuis v. Thompkins, 560 U.S. 370, 381–82 (2010); see United States v. Plugh, 648 F.3d 118, 125 (2d Cir. 2011).

3.   Trial References to Liounis's Reluctance To Speak with Authorities

Liounis argues that his right to remain silent was violated by agent testimony about his reluctance to "make any statements" because Liounis stated, "I don't want to incriminate myself," D.A. 257, 262.   As Liounis did not object to the testimony at trial, our review is limited to plain error.   Liounis cannot satisfy this standard because, while

7

Doyle v. Ohio, 426 U.S. 610 (1976), precludes the prosecution from using a defendant's post-arrest silence as substantive evidence of guilt, there is no Doyle error where, as here, a defendant is found not to have unambiguously invoked his right to remain silent before making an inculpatory admission, see United States v. Okatan, 728 F.3d 111, 118 (2d Cir. 2013) (stating that constitutionality of government's use of defendant's silence turns on whether defendant asserted privilege against self-incrimination).   Indeed, because a jury must decide for itself the reliability of a defendant's inculpatory statement, the circumstances informing the statement are properly admitted.   See United States v. Yousef, 327 F.3d 56, 131 (2d Cir. 2003) (noting requirement that district court "'instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances'" (quoting 18 U.S.C. § 3501(a))).

Liounis also asserts error in DeLisio's opinion testimony regarding the agent's understanding of why Liounis was hedging his responses to interrogation.   The argument fails because "there is no theoretical prohibition against allowing lay witnesses to give their opinions as to the mental states of others" with whom they deal directly. United States v. Rea, 958 F.2d 1206, 1214–15 (2d Cir. 1992); see United States v. Garcia, 291 F.3d 127, 141 (2d Cir. 2002) (observing that to extent witness offered opinion about what he understood defendant to mean, he was indirectly offering opinion about what defendant knew, which evidence "in itself is not impermissible"); see generally United States v. Garcia, 413 F.3d 201, 212 (2d Cir. 2005) (observing, with respect to lay opinion testimony, that "rule recognizes the common sense behind the saying that, sometimes, 'you had to be there'").   But even if there were error here, it was harmless.   See United

States v. Garcia, 291 F.3d at 143 (noting such error is harmless "if the appellate court can conclude with fair assurance that the evidence did not substantially influence the jury" (internal quotation marks omitted)).   This is because the evidentiary value of DeLisio's opinion that Liounis was trying to shield himself by answering questions indirectly or "hypothetically" was comparatively insignificant to Liounis's repeated assertions that any statements he made would be incriminatory, which strongly manifested consciousness of guilt.   See e.g., Quintana v. Armstrong, 337 F. App'x 23, 26 (2d Cir. 2009) (stating that defendant's concern that eyewitness may "get scared and tell about the incident" was "strongly suggestive" of consciousness of guilt); United States v. Adegbite, 877 F.2d 174, 180 (2d Cir. 1989) (holding that defendant's "deliberate evasiveness" in response to question "bespoke a consciousness of guilt").

The same conclusion obtains as to DeLisio's opinion testimony that a throw-away phone was used to call conspiracy leader "Alex," given Liounis's admission that he called Alex on the phone, and records showing that "about ninety percent" of the phone's calls were to Alex.   D.A. 286–87.

4.   Ineffective Assistance of Trial Counsel

Liounis charges trial counsel with constitutionally ineffective representation in (a) conceding guilt on summation, (b) not moving to reopen the suppression hearing, and (c) failing to object to DeLisio's testimony regarding Liounis's refusals to answer questions directly.   While we generally decline to resolve ineffectiveness claims on direct review, see Massaro v. United States, 538 U.S. 500, 504–05 (2003), we will do so where, as here, the factual record is sufficiently developed that resolution of the claim is

9

"beyond any doubt," United States v. Gaskin, 364 F.3d 438, 468 (2d Cir. 2004) (internal quotation marks omitted).

Our resolution of the merits of Liounis's second and third claims against him precludes him from demonstrating the requisite prejudice from trial counsel's failure to raise them.   See Strickland v. Washington, 466 U.S. 668, 694 (1984).   As for Liounis's claim that trial counsel conceded his identity as "Mark Anderson" to the jury, Appellant Br. 68, the record is so clearly to the contrary as to defeat the ineffective assistance claim beyond any doubt on direct appeal.   Indeed, counsel was careful not to concede Liounis's identity.   See, e.g., D.A. 290d, 290e; G.A. 55–56.   Further, given the jury's ability to compare the recorded voice of "Mark Anderson" with Liounis's voice (as a result of his decision to testify), counsel sensibly did not confine his defense to the issue of identity, arguing instead that Liounis was, at most, a cold-caller who did not understand the fraudulent nature of the scheme.   In sum, Liounis cannot overcome the "strong presumption" that counsel's conduct "might be considered sound trial strategy." Strickland v. Washington, 466 U.S. at 689 (internal quotation marks omitted).

5.   Sentencing Challenges

We apply "a particularly deferential form of abuse-of-discretion review" to Liounis's claim that his 292-month sentence is procedurally and substantively unreasonable.   United States v. Cavera, 550 F.3d 180, 187–88 & n.5 (2d Cir. 2008) (en banc); accord United States v. Broxmeyer, 699 F.3d 265, 278 (2d Cir. 2012).

Although a district court errs procedurally if, inter alia, it miscalculates a defendant's Guidelines range or rests its sentence on clearly erroneous factual findings, see United States v. Cavera, 550 F.3d at 190, no such errors are evident here.

Liounis argues that the district court miscalculated loss, see U.S.S.G. § 2B1.1(b), by treating the Rockford Group and UBS schemes as relevant conduct without sufficient evidence of a common scheme or course of conduct with the Grayson Hewitt fraud, see id. § 1B1.3(a)(2), and without particularized findings as to his personal involvement.   In fact, the district court satisfied its particularized-finding obligation by adopting facts set forth in the presentence report ("PSR").   See United States v. Carter, 489 F.3d 528, 539 (2d Cir. 2007) (approving explicit reliance on PSR facts for requisite findings).   Those facts, which Liounis does not dispute on appeal, indicated that: (1) an investor-victim recognized a caller identifying himself as "Andrew Black from UBS" as having the same voice as a caller posing as "James Weston" in the Rockford scheme; (2) another investor-victim recognized the voice of "Andrew Black" as belonging to "Mark Anderson from Grayson Hewitt"; and (3) subsequent analysis confirmed that the voices of "Andrew Black" and "Mark Anderson" belonged to Liounis.   This was sufficient to admit a preponderance finding of common scheme.   See United States v. Hertular, 562 F.3d 433, 447 (2d Cir. 2009) (discussing preponderance standard at sentencing). Indeed, the conclusion was reinforced by the district court's observations that the schemes were carried out during the same time period, involved "almost precisely the same conduct," and utilized sophisticated promotional materials that were "virtually identical in every respect."   D.A. 503.

11

Nor do we identify error in the district court's acceptance of the government's representation as to the number of victims and amount of loss in the Rockford scheme. One week before sentencing, the government provided Liounis and the district court with factual support in the form of a Securities and Exchange Commission declaration filed in a civil action against Rockford explaining how bank records—provided to Liounis more than two years earlier—indicated that the fraud involved at least 200 victims and caused losses of approximately $11 million.   Thus, Liounis cannot demonstrate either that the district court's findings lack factual support or that he was unable to mount an informed challenge.   These circumstances, together with the hours afforded by the district court for Liounis to raise numerous objections, defeat Liounis's attempt to locate procedural error in the lack of a formal evidentiary hearing on these issues.   See United States v. Slevin, 106 F.3d 1086, 1091 (2d Cir. 1996) (holding that neither due process nor Sentencing Guidelines require full-blown evidentiary hearing to resolve sentencing disputes where defendant is afforded "some opportunity to rebut the Government's allegations"); accord United States v. Sabhnani, 599 F.3d 215, 258 (2d Cir. 2010).

As for Liounis's substantive challenge, we will set aside a sentence on that ground only in "exceptional cases" where the sentence cannot be located within the range of permissible decisions available to a sentencing court.   United States v. Cavera, 550 F.3d at 189; accord United States v. Broxmeyer, 699 F.3d at 288–89.   In the "overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range" of permissible sentences.   United States v. Jones, 531 F.3d 163, 178 (2d Cir. 2008).   This case is no exception.

As the district court's thorough discussion of the statutory sentencing factors makes plain, Liounis's crime was particularly serious, his lack of remorse evident, and his risk of recidivism high.   See 18 U.S.C. § 3553(a).   Liounis carried out a sophisticated scheme that defrauded more than 250 victims—many elderly and vulnerable—out of millions of dollars.   The district court found Liounis to be both callously indifferent to the pain caused by his scheme, and lacking in respect for the law, the latter evident from (a) his commencement of the charged fraud soon after release from an 87-month sentence for an earlier fraudulent scheme, (b) his contempt of court in this case, and (c) his obstruction of justice at trial.   In these circumstances, a low-end Guidelines sentence cannot be deemed outside the district court's permissible choices. Nor is a different conclusion warranted by the mitigating factors cited by Liounis, specifically, his lack of substantial financial benefit or leadership role, and his purported untreated drug addiction.   The weight to be afforded such factors is a "matter firmly committed to the discretion of the sentencing judge" and generally beyond appellate review.   United States v. Fernandez, 443 F.3d 19, 32 (2d Cir. 2006).

We, therefore, reject Liounis's sentencing challenges as without merit.

6.   *Pro Se* Claims

Liounis's pro se challenge to the reasonableness of his sentence fails for the same reasons as his counseled challenge.

Liounis's sufficiency challenge based on United States v. Newman, 773 F.3d 438, 450 (2d Cir. 2014), fails because receipt of a personal benefit is not an element of any of the crimes of conviction.

13

Liounis's indictment challenges are defeated by both the record and long-standing precedent.   See United States v. Schlesinger, 598 F.2d 722, 726 (2d Cir. 1979) (holding that Fifth Amendment does not require court to look behind facially valid indictment to consider evidence upon which it is based); United States v. Scopo, 861 F.2d at 341 (approving redactions to provide jury with less prejudicial version of indictment).

His challenge under Brady v. Maryland, 373 U.S. 83 (1963), lacks record support. As the government explains, the only documents identified by Liounis that were not either publicly available or previously disclosed to him do not exist.

Liounis's speedy trial claims fail for the reasons set forth in the district court's well-reasoned memorandum and order of October 10, 2013.

His claim of judicial bias fails because adverse judicial rulings cannot support such a claim absent "deep-seated favoritism or antagonism that would make fair judgment impossible."   United States v. Yousef, 327 F.3d at 170 (internal quotation marks omitted).   That is not this case.   To the contrary, the district judge methodically addressed dozens of Liounis's pro se applications spanning hundreds of single-spaced, typed pages.   Moreover, the judge patiently strove to provide Liounis with a fair and impartial forum notwithstanding Liounis's frequent obstreperous and self-defeating conduct.   Cf. Liteky v. United States, 510 U.S. 540, 555–56 (1994) (stating that "expressions of impatience, dissatisfaction, annoyance, and even anger" are insufficient to establish bias or partiality).   On this record, the district judge's failure to recuse himself manifests no abuse of discretion.   See In re Basciano, 542 F.3d 950, 957 (2d Cir. 2008) (identifying standard of review).

14

Insofar as Liounis's litany of pro se ineffective assistance claims are coextensive with those raised in his counseled brief, we have already explained why they fail. Consistent with our preference for hearing such claims on collateral review, see Massaro v. United States, 538 U.S. at 504, we decline to address his remaining ineffectiveness claims on the present record, instead dismissing them without prejudice to Liounis filing a petition under 28 U.S.C. § 2255.

Because Liounis's remaining constitutional claims are presented only "perfunctorily," we deem them waived.  See, e.g., United States v. Botti, 711 F.3d 299, 313 (2d Cir. 2013).

7.    Conclusion

We have considered all of Liounis's remaining counseled and pro se arguments, and we conclude that they are without merit.    Accordingly, the judgment of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court



A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

15